[S. F. No. 13152. In Bank.—April 26, 1929.]

LOS ANGELES & SALT LAKE RAILROAD COMPANY (a Corporation), Petitioner, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA, etc., et al., Respondents.

Fred E. Pettit, Jr., E. E. Bennett, F. G. Athearn and Harry B. Ellison for Petitioner.

Carl I. Wheat, Reginald L. Vaughan and Roderick B. Cassidy for Respondents.

F. W. Turcotte for Van Camp Sea Food Co.

CURTIS, J.—This proceeding was instituted by the petitioner to have reviewed and annulled by this court an order and decision of the respondent, the Railroad Commission of the State of California, authorizing and directing petitioner to refund to the Van Camp Sea Food Company, referred to herein as the complainant, a certain sum of money which the commission found was the difference between the freight charges actually paid and those legally collectible by petitioner on certain shipments of merchandise involved in said proceeding before said commission. One of the defenses interposed by petitioner in the proceeding before said commission was that "complainant's cause of action is barred by reason of that portion of section 71, subparagraph (b), of the Public Utilities Act of the State of California (as amended by Stats. 1925, p. 648), reading as follows: 'All complaints concerning unreasonable, excessive or discriminatory charges shall be filed with the Commission within two years from the time the cause of action accrues.' "

The complaint in said proceeding showed that the cause of action involved therein resulted from shipments of merchandise made by Van Camp Sea Food Company between April 13, 1923, and October 24, 1923, and, therefore, that the causes of action accrued not later than the last-named date. The so-called formal complaint therein was filed with the commission on January 30, 1928, four years, three months and six days after the date of the last of said shipments of merchandise. Notwithstanding this fact, the commission

held that the filing with the commission of an "informal complaint covering said charges on the 21st day of September, 1925," tolled the statute of limitations, and entered its order referred to above against petitioner. Hence this proceeding in this court.

There is no dispute as to the date of the shipments on which it is claimed that an excess freight charge was made by the petitioner against the shipper, the Van Camp Sea Food Company. The record discloses the fact that a letter written on the letter-head of the Carmichael Traffic Corporation, and signed by said corporation, was, on the twenty-first day of September, 1925, received by the commission. On receipt of this letter by the commission the same was filed or registered by the commission and the number I. C. 33274 assigned to it. The letters "I. C." stand for or mean "informal complaint." It does not appear that any action was taken by the commission upon this so-called informal complaint except to acknowledge its receipt and to return to the writer thereof certain freight bills which had been inclosed with the letter written to the commission. No notice of the filing of said letter, or informal complaint, was ever given to the petitioner, and no hearing was ever had on said so-called informal complaint. This "informal complaint" sets forth the nature of the demand of the complainant, the Van Camp Sea Food Company, against petitioner, the amount thereof, and the facts out of which it arose. It closed with the request that the commission "refer our complaint to the carrier informally for an expression of their attitude towards an informal adjustment, returning papers to us after registering the freight bills, to prevent operation of the statute of limitations, in order that we may take the matter up with them direct." The sending of this letter, and its receipt and assignment to it of a number by the commission as an informal complaint were in accordance with a practice followed by the commission for many years, and which appears to have been acquiesced in both by shippers and carriers in proceedings before said commission. The purpose of this procedure was to stop the running of the statute of limitations by the filing of the informal complaint, and thus permit the shipper and the carrier to arrive at an amicable settlement of their controversy, subject to the approval of

the commission, without the necessity of a hearing before the commission, or, as stated in the letter of September 21, 1925, to arrive at an "informal adjustment" of their differences. Just what efforts were made by the parties interested in the present proceeding, after the filing of said "informal complaint," to arrive at an amicable adjustment of the claim of the Van Camp Company, is not disclosed by the record. The next action taken before the commission by either of said parties was the filing by the Van Camp Company of a so-called formal complaint, in which it asked that "defendant may be required to answer all charges herein; that after due hearing and investigation an order be made commanding said defendant· to pay to complainant, by way of reparation for the unlawful charges hereinbefore alleged, the sum of $743.67," etc. Upon the filing of this complaint the commission caused a copy thereof to be served upon the carrier, the petitioner herein, and in other respects complied with the requirement of the Public Utilities Act providing the procedure to be followed in such proceedings. This procedure is to be found set forth in section 60 of said act (Stats. 1915, p. 158), and is as follows: "Upon the filing of a complaint the Commission shall cause a copy thereof to be served upon the corporation or person complained of. Service in all hearings, investigations and proceedings pending before the Commission may be made upon any person upon whom a summons may be served in accordance with the provisions of the Code of Civil Procedure of this state, and may be made personally or by mailing in a sealed envelope, registered, with postage prepaid. The Commission shall fix the time when and place where a hearing will be had upon the complaint and shall serve notice thereof, not less than ten days before the time set for such hearing, unless the Commission shall find that public necessity requires that such hearing be held at an earlier date."

By section 60 of said act (Stats. 1915, p. 157) it is also provided that "Complaint may be made . . . by any corporation or person . . . by petition or complaint in writing, setting forth any act or thing done or omitted to be done by any public utility, including any rule, regulation or charge heretofore established or fixed by or for any public utility, in violation, or claimed to be in violation, of any

provision of law or of any order or rule of the Commission." Then follows the provision already quoted, requiring the commission to give notice to the "corporation or person complained of," after which the commission shall fix the time and place of a hearing on said complaint and shall serve notice thereof not less than ten days before the date of hearing. It is admitted that none of these steps was taken by the commission upon the filing of the letter of September 21, 1925. However, after the filing of the complaint on January 30, 1928, referred to as a formal complaint, the same was served on the corporation complained of, and in all other respects the provisions of section 60 of the act, above quoted, were complied with.

The question, therefore, presented for decision is whether the letter of the Carmichael Traffic Association, received by the commission on the twenty-first day of September, 1925, was a valid and legal complaint within the provisions of the Public Utilities Act of this state. No question is made as to the authority of the Carmichael Traffic Association to write said letter in behalf of the Van Camp Company. It may not comply in form with the rules of the commission, but these may be waived. (*Ghriest* v. *Railroad Com.*, 170 Cal. 63 [148 Pac. 195].) It was in writing, as provided by section 60 of said act. We have already referred to the nature of its contents, including the prayer or request made upon the commission regarding the action which the sender thereof desired to be taken by the commission in response to the letter. We may assume that it stated the necessary facts required to be alleged in a complaint of this nature. If it were a legal complaint under said act it was the duty of the commission to serve a copy upon the carrier, the petitioner herein, to fix a time and place for a hearing thereon and to give the parties notice of said hearing. This was not done by the commission, but its failure to do so would not prejudice the rights of the complainant. The commission, however, took no steps to hold a hearing on the so-called informal complaint, for the reason, no doubt, as it appeared to the commission, and as it appears to us, that the letter was not written for any such purpose, but it was written for the purpose, as stated therein, that the complainant might secure an informal adjustment of its claim. This it desired to accomplish either

by the commission informally obtaining an expression from the carrier as to its attitude toward an informal adjustment, or, in case the commission did not care to act in the matter, to return the papers to the complainant "in order that we may take the matter up with them (the carrier) direct." It is not claimed that there is anything in the Public Utilities Act providing for an informal adjustment of claims of this nature, nor is it contended that there was any legal requirement on the part of the commission to act in such a proceeding in any manner. It seems that the commission declined to accede to the request of the writer of the letter to take the matter up with the carrier, but returned the papers as requested. It probably never occurred to the commission to treat said letter as a complaint, or else no doubt it would have followed the provisions of the statute and would have taken steps to hold a hearing thereon. We think that there can be no question as to the correctness of the conclusion reached by the commission in this regard. The letter on its face showed that it was not written for the purpose of having it serve as a complaint upon which a hearing might thereafter be held for the purpose of determining the merits of the complainant's claim, but in the hope that the shipper and the carrier might reach an amicable settlement of the controversy through an "informal adjustment" of their differences. This conclusion is fortified by the practice or custom, which appears to have been acceded to by the commission, of filing what has been referred to as an "informal complaint," after which the shipper and carrier would attempt to adjust their differences, and if this failed, a "formal complaint" would then be filed, under which a hearing would be held for the purpose of determining the merits of the claim of the shipper. Under this practice the "informal complaint" is not filed for any purpose contemplated by the statute. It cannot, therefore, have any legal effect as to the rights of the parties under the Public Utilities Act. So, in the proceeding now before us, the letter of September 21, 1925, asked for no relief in the power of the commission to grant. It cannot therefore be considered or held to be a complaint as contemplated by the terms of said act. We have not overlooked the following statement in said letter in reference to the statute of limitations, "returning papers to us after registering the freight bills, to prevent operation of the statute of limitations."

We confess we are in doubt as to the meaning or purpose of this statement except it be that, in the opinion of the writer of said letter, the sending thereof to the commission would stop the running of the statute. If such was his opinion we think he was in error, as the letter without this reference to the statute of limitations was not a legal complaint as contemplated by the State Utilities Act, the mere statement of the opinion of the writer thereof that it might have such effect, and was written and filed with the commission for that purpose, would not change its legal effect.

We have but to look at the result of following such a practice to see how it circumvents the provisions of the act limiting the filing of a complaint to two years after the cause of action accrued. Under the practice followed by the complainant a shipper, having a claim for excessive freight charges against a carrier, just prior to the date his claim would be barred by the statute of limitations, writes a letter like that written by the Carmichael Traffic Corporation to the commission, or files an informal complaint with the commission. No steps are taken to hold a hearing before the commission on this letter or informal complaint, and none has been asked for or contemplated by the terms of the letter or the informal complaint. No notice is given of the writing of such letter or the filing of such informal complaint to the shipper. Two years thereafter, and it might just as well be five or ten years thereafter, the shipper files a so-called formal complaint, setting up the facts upon which he bases his claim, and asks for a hearing thereon to determine the question on its merits. Under the contention made by respondent herein the plea of the statute of limitations would be unavailing to the carrier for the reason that the shipper, before the tolling of the statute, had written this letter or filed this so-called informal complaint with the commission, of which the carrier never had any notice or knowledge. Surely such a practice would be against both the spirit and the letter of the act which bars proceedings before the commission two years after the action accrues.

The fact that the practice of filing an informal complaint and thereafter filing a formal complaint upon the same claim or demand has for some considerable time been followed before the commission and acquiesced in by both shippers and carriers cannot affect the result of this pro-

ceeding. It cannot find sanction in the statute, and for that reason it cannot be upheld in a legal proceeding. It may be true that a larger number of claims may be handled in this manner by the commission with but little expense, labor or trouble, and that in the past this practice has been followed in many cases without objection from the parties thereto, but it does not follow that in those proceedings where an objection is made, the party objecting is not entitled to the legal rights afforded him by the act. We are loath to make any ruling which will interfere with the prompt and efficient dispatch of the large and increasing number of matters coming before the commission for its consideration and determination. We appreciate the heavy burden that this important branch of our state government is being called upon to bear, and the necessity for it to adopt a procedure that will enable it to expeditiously handle and dispose of the large volume of business demanding its attention. Nevertheless, the constitution of the state and the statutes passed in accordance therewith are the measure of its power, and the procedure followed by the commission must conform to the constitutional and statutory requirements. If the present law is not feasible nor practical, and a longer period than two years should be provided by statute, after the accrual of a cause of action, in which the parties might endeavor to arrive at an informal adjustment of their differences, then resort should be had to the legislature for the purpose of amending the statute in that respect. Neither the commission nor the courts can render this relief. ██ While the commission, under section 53 of the act (Stats. 1915, p. 153), has power to adopt rules of practice and procedure, such rules must conform to, and not be in conflict with, the provisions of said act. We think, therefore, that the commission did not regularly pursue its authority in said proceeding when it made its order under the circumstances related herein, directing petitioner to refund to the Van Camp Sea Food Company the amount of said excess charges upon a complaint which was filed over four years after the cause of action alleged therein had accrued.

Said order for that reason is therefore annulled.

Langdon, J., Richards, J., Seawell, J., Shenk, J., Preston, J., and Waste, C. J., concurred.