[Sac. No. 4901. In Bank.—February 26, 1935.]

JACK M. COOPER, a Minor, etc., Appellant, v. BYRD W. KELLOGG et al., Respondents.

James, Brann & Rowe and White, Miller, Needham, Harber & Mering, for Appellant.

Bronson, Bronson & Slaven and Harold R. McKinnon for Respondents.

THOMPSON, J.—Jack M. Cooper, by his guardian *ad litem*, Maree Barbara Roberts, brings this action to recover damages for personal injuries received while riding as a guest with the defendant Beecher Kellogg, in a car belonging to the defendant Byrd W. Kellogg. Since the accident occurred on October 12, 1930, a finding of gross negligence upon the part of the driver will warrant a recovery by the guest under section 141¾ of the California

Vehicle Act as in effect at that time. (*Stotts* v. *Blickle,* 220 Cal. 225 [30 Pac. (2d) 392].)

Jack Cooper left Santa Rosa with the defendant Beecher Kellogg, who was at that time about eighteen years old, at about 8 o'clock on the morning of October 11, 1930, for the purpose of driving to San Mateo to see a football game. No issue is made as to Cooper's status as a guest or the consent of Byrd W. Kellogg to the use of her car. The boys arrived at San Francisco about 10:30 A. M., lunched and then went on to San Mateo. After the football game they drove back to San Francisco, had dinner and went to the theater, starting for Santa Rosa via the 12 or 12:30 Sausalito ferry. Arrived on the ferry, the defendant went upstairs and walked around. Cooper remained in the car and went to sleep, awakening when the boat docked and Kellogg drove off, at which time he asked defendant whether he wanted him to stay awake and talk to him or whether it was all right for him to continue sleeping. To which Kellogg replied that he was not sleepy and that "it would be all right if he (Cooper) went to sleep". Cooper awoke once more when they passed an automobile accident on the highway, then went back to sleep and woke again in the hospital at Petaluma. Kellogg testified that he felt no sleepiness on the boat or when Cooper questioned him as they drove off; that the left-hand window of the car was open, it was raining slightly and there was a cool wind; that the wind and rain acted as a stimulant, if anything; that his average speed was around thirty-five miles an hour and traffic was very light. He does not recall feeling any sleepiness at all, but remembers taking a curve just north of Novato and some straight road after that, and his next recollection is the hospital. He did not see at all the car which he hit. He testified he had no premonition or warning of sleepiness at all. The court then asked him, overruling the plaintiff's objection that it was incompetent, irrelevant and immaterial: "Were you asleep?" Kellogg replied: "I must have been asleep," and, when questioned as to whether he knew he was asleep, said: "No, that seems to be the only logical conclusion to be drawn."

In this situation the only actual witness of the accident itself is William Dresbach, the driver of the car with which the Chevrolet driven by Kellogg collided. Dresbach's testi-

mony is as follows: He was driving south on the main highway between Petaluma and Novato (it is stipulated the accident took place about six or seven miles south of Petaluma); that the highway is about twenty feet wide, with unpaved shoulders about ten feet wide on each side, and for about a quarter of a mile on each side of the point of collision is level and straight; that the center line of the highway is marked by a joint in the paving and that there was a slight rain, but the visibility was good; that he observed the lights of the Kellogg car when it was about a quarter of a mile away and, at a distance of about 150 yards, saw it make a slight turn and begin to come over on his side of the highway; that he was puzzled as there was no other car in the road for Kellogg to pass, and, as the Chevrolet continued "quartering across the highway" Dresbach pulled off the highway entirely and had almost come to a complete stop when the Chevrolet hit him almost head-on. Dresbach further testified that the Chevrolet was either entirely off the highway on Kellogg's left-hand side, or almost off; that the speed of the defendant's car was about twenty miles an hour when it struck him and the lights of both cars were burning. The accident occurred about 2 A. M.

Upon this testimony, the trial court found that the defendant Beecher Kellogg did not operate the automobile in a grossly negligent manner, and, in its order for findings, discloses the rationale of this conclusion by saying: "From the evidence herein, independent of the answer of the witness to the court's interrogatory to which plaintiff objected, the conclusion is irresistible, in fact, it appears to be the only logical one, that at the time of the collision defendant Beecher Kellogg was asleep. Under these circumstances was Beecher Kellogg guilty of gross negligence? The determination of this question depends upon whether defendant Beecher Kellogg was grossly negligent in permitting himself to fall asleep, rather than whether he was negligent in the manner in which he controlled the car, since he could not be held negligent for his actions after he had fallen asleep, . . . In the instant case defendant Beecher Kellogg testified that at no time prior to the collision did he experience a feeling of sleepiness or any warning of impending sleep. Had he received such a warning and continued to drive his

automobile despite the same, or had he continued to drive with knowledge that sleep was imminent or with consciousness of 'feeling drowsy', this Court has no doubt that the charge of gross negligence could be sustained. However, those are not the facts. . . . Beecher Kellogg has testified positively that he received no premonition of sleepiness—no consciousness of feeling sleepy. In view of the demeanor of the witness and the character of his testimony, this Court feels that such testimony cannot—nor should it—be disregarded." From a judgment in favor of the defendant the plaintiff appeals.

The appeal is prosecuted upon the grounds that (1) the uncontradicted evidence requires a finding of gross negligence upon the part of Beecher Kellogg, (2) the trial court committed error in overruling the plaintiff's objection to its question to Beecher Kellogg, "Were you asleep?", and (3) it was error to deny plaintiff's motion for a new trial made upon the ground of newly discovered evidence.

The inference drawn by the trial court that Beecher Kellogg was asleep at the time of the accident is reasonable in the light of the circumstances of the accident. According to the uncontradicted testimony of Dresbach, Kellogg drove his car down the wrong side of the highway in full view of the approaching car, and without making any attempt to stop or return to his own side of the road. This supports Kellogg's own testimony that he never saw the Dresbach car. In view of the testimony that the visibility was good, that Dresbach saw the lights of the Chevrolet about a quarter of a mile away, that his own lights were burning and that there was little other traffic, it seems hardly probable that Kellogg would have failed to see the car had he been awake, or that if he had not been asleep he would have driven clear off the highway to his left. In *Stotts* v. *Blickle*, 220 Cal. 225, 227 [30 Pac. (2d) 392], this court said: "At about 5 p. m. he was driving along a clear highway, about thirty miles per hour, when suddenly the car left the pavement and for about one hundred and fifty feet was off the road, until it struck a power pole located about seven and one-half feet from the edge of the highway. Defendant did not apply the brakes, and made no attempt to turn the car back to the road. The deceased's mother, sitting in the back, called to him twice. He apparently did not hear the first call, but at the second

he swerved the car and struck the pole a glancing blow which threw the deceased out of the car and killed him. Defendant's declarations and testimony, together with the foregoing circumstances, established by several witnesses, justified the inference that he dozed off at the time of the accident." It is true that in the Stotts case the defendant had felt drowsy as a result of lack of sleep the night before, while in the case at bar much point is made of the testimony of the defendant that he did not at any time feel sleepy and that the rain and wind from his open window had a stimulating effect. In *Bushnell* v. *Bushnell*, 103 Conn. 583 [131 Atl. 432, 44 A. L. R. 785], it is said that sleep does not ordinarily come upon one without some premonition or warning of its approach, but that this circumstance is one of the considerations which must be weighed in determining the fact of negligence. In fact, the inference of sleep or a light doze is, to our minds, much more reasonable than the alternative, that, on a straight highway, at night, with little traffic and a sleeping companion, hence no scenery or conversation to distract him, the defendant simply did not see the approaching car and yet was wide awake. An inference of sleep was held to be reasonable under very similar circumstances in *White* v. *Stanley*, 169 Wash. 342 [13 Pac. (2d) 457].

In *Stotts* v. *Blickle*, *supra*, falling asleep at the wheel was held to constitute gross negligence and warrant recovery by a guest. There, however, as has been pointed out, the defendant knew he was drowsy from lack of sleep the night before. There was also the additional factor that the car was, to defendant's knowledge, not steering properly and he failed to have it repaired. Hence this case is not authority for the proposition that falling asleep while operating a car is, in itself, gross negligence. In fact, the numerous cases examined in which the courts of other jurisdictions have considered this question are almost unanimously to the effect that the fact of falling asleep while driving is sufficient to establish a *prima facie* case of ordinary negligence only, whereupon it becomes incumbent upon the defendant to offer proof of circumstances in excuse or justification of his conduct, and that the question of existence of that degree of negligence or misconduct which is necessary for a recovery under the particular "guest law" under consideration is a question of fact for the jury or

trial judge, to be determined in the light of the evidence and the inferences which may reasonably be drawn therefrom.

▮ Where more than ordinary negligence is required for recovery, the particular question becomes, whether, in the light of the surrounding circumstances, there was a sufficient likelihood, of which the defendant knew or should have known, that sleep would overtake him while operating the car to render him guilty of the degree of culpability necessary for recovery (See *Bushnell* v. *Bushnell,* 103 Conn. 583 [131 Atl. 432, 44 A. L. R. 785] ; *Potz* v. *Williams,* 113 Conn. 278 [155 Atl. 211] ; *Freedman* v. *Hurwitz,* 116 Conn. 283 [164 Atl. 647] ; *Ryan* v. *Scanlon,* 117 Conn. 428 [168 Atl. 17] ; *Blood* v. *Adams,* 269 Mass. 480 [169 N. E. 412] ; *Devlin* v. *Morse,* 254 Mich. 113 [235 N. W. 812] ; *Manser* v. *Eder,* 263 Mich. 107 [248 N. W. 563] ; *Boos* v. *Sauer,* 266 Mich. 230 [253 N. W. 278] ; *Krantz* v. *Krantz,* 211 Wis. 249 [248 N. W. 155] ; *Kaplan* v. *Kaplan,* 213 Iowa, 646 [239 N. W. 682] ; *Hardgrove* v. *Bade,* 190 Minn. 523 [252 N. W. 334] ; *Brownell* v. *Freedman,* 39 Ariz. 385 [6 Pac. (2d) 1115] ; *Whiddon* v. *Malone,* 220 Ala. 220 [124 So. 516] ; *Gilliland* v. *Harris,* 25 Ala. App. 549 [150 So. 184] ; *Gower* v. *Strain,* 169 Miss. 344 [145 So. 244].)

Where the defendant has known he was sleepy, but has thought he would be able to complete his trip without actually going to sleep and so continued to drive, but has in fact slept at the wheel and had an accident because of it, the evidence has been held to justify a finding of reckless misconduct (*Potz* v. *Williams* and *Freedman* v. *Hurwitz*) ; gross negligence (*Ryan* v. *Scanlon* and *Blood* v. *Adams*) ; wilful and wanton misconduct (*Manser* v. *Eder*). But see *Boos* v. *Sauer,* holding it was error to rule that because the driver felt sleepy it was gross negligence as a matter of law to continue to drive (gross negligence in Michigan involves wilful and wanton misconduct), and *Kaplan* v. *Kaplan,* holding that the fact that the driver "was tired and facing the east sun and went to sleep cannot and does not raise any negligence there may have been in said act to the level of recklessness". ·(All *supra.*)

▮ Gross negligence has been repeatedly defined in the California cases as "the want of slight diligence", "an entire failure to exercise care, or the exercise of so slight a degree of care as to justify the belief that there was

an indifference to the things and welfare of others'', and ''that want of care which would raise a presumption of the conscious indifference to consequences''. (*Krause* v. *Rarity*, 210 Cal. 644 [293 Pac. 62, 77 A. L. R. 1327]; *Kastel* v. *Stieber*, 215 Cal. 37 [8 Pac. (2d) 474]; *Malone* v. *Clemow*, 111 Cal. App. 13 [295 Pac. 70].) Whether there has been such a lack of care as to constitute gross negligence is a question of fact for the determination of the trial court or jury, and this is so ''even where there is no conflict in the evidence if different conclusions upon the subject can be rationally drawn therefrom''. (*Malone* v. *Clemow*, *supra*.) Even in the light of the following circumstances which are urged upon our attention by appellant: that Kellogg was about nineteen or twenty years old, that he had been up since 7 A. M., that the accident took place about 2 A. M. of the following day, that he had driven about 200 miles and had spent the day in the open at a football game, we cannot say that the only reasonable conclusion the trial court could reach was that there was such a likelihood of his falling asleep, of which he knew or should have been aware, that his continuing to operate the car amounted to gross negligence as defined above. Kellogg testified that he did not feel sleepy but appellant insists that one cannot fall asleep without experiencing the ordinary feelings and symptoms of oncoming sleep. This question also falls within the province of the trier of the fact. In *Bushnell* v. *Bushnell*, *supra*, upon which the appellant places great reliance, the Connecticut court said: ''it then becomes a question of fact whether or not the driver was negligent; and, in determining that issue, all the relevant circumstances are to be considered, including the fact that ordinarily sleep does not come upon one without warning of its approach''.

The trial court did not commit error in overruling plaintiff's objection to the question it asked of Beecher Kellogg, ''Were you asleep?'' The objection was made on the ground that the question was irrelevant, incompetent and immaterial. The inquiry was obviously relevant and material, it did not call for a conclusion, except in so far as a great many statements as to the witness' own physical and mental condition are conclusions. It is true the answer is given in the form of a conclusion but no motion to strike was made, and, for what it is worth, it supports the infer-

ence of sleep made by the trial court independently of the stated conclusion of the witness.

In support of his motion for a new trial the plaintiff offered affidavits, his own and those of his guardian *ad litem* and one Antone J. Trigeiro, to show, as newly discovered evidence, a conversation, a day or so before the trial of the action, between the defendant and Trigeiro in which the defendant told Trigeiro that he had been up late the night before the accident and because of this fell asleep at the wheel, and that he was already sleepy when he left San Rafael on the way back to Santa Rosa. In opposition to those affidavits, Beecher Kellogg made his affidavit flatly denying the conversation and reiterating his statements that he did not know how the accident happened, but merely concludes from the circumstances that he must have fallen asleep and that he has no recollection of any feeling of sleepiness.

The action of the trial court in denying a motion for new trial on the ground of newly discovered evidence rests largely in the discretion of the trial judge. (*Maxwell Hardware Co.* v. *Foster,* 207 Cal. 167 [277 Pac. 324].) Moreover, it is not ordinarily proper to grant a new trial where the evidence offered is merely designed to contradict a witness, especially where the truth of the evidence is controverted by counter-affidavits of the opposing party and the trial judge has an opportunity for balancing the weight and credibility of the opposing affidavits in passing upon the motion. (*Waer* v. *Waer,* 189 Cal. 178 [207 Pac. 891].) No abuse of discretion appears.

The judgment appealed from is affirmed.

Shenk, J., Langdon, J., Preston, J., Seawell, J., and Waste, C. J., concurred.

Rehearing denied.

Curtis, J., voted for a hearing.