[Crim. No. 5818. Second Dist., Div. One. Aug. 15, 1957.]

THE PEOPLE, Respondent, v. TYSON LEE MARKHAM, Appellant.

Gladys Towles Root, Eugene V. McPherson and Joseph A. Armstrong for Appellant.

Edmund G. Brown, Attorney General, and Herschel T. Elkins, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an amended information filed by the district attorney of Los Angeles County containing three counts, appellant was accused in Count I of violation of section 501 of the Vehicle Code, causing bodily injury and death while under the influence of intoxicating liquor and driving an automobile. Count II charged a violation of Penal Code, section 192, subdivision 3a, manslaughter, causing the death of Faye Jean Zander. Count III charged the same offense alleged in Count II resulting in the death of William L. McKnabb.

The information also alleged the commission of two prior felonies, both robbery. This allegation was admitted by defendant at his trial.

The latter pleaded not guilty to the offenses charged in all counts of the information. Trial by jury resulted in verdicts finding defendant guilty as charged in each count. The acts charged in Counts II and III were found to have been performed with gross negligence. Defendant was sentenced to state prison. From the judgment of conviction defendant prosecutes this appeal.

As to the factual background surrounding this prosecution the record reflects that about 7:30 or 7:45 p.m. on the evening of May 10, 1956, Miss Patricia L. McKnabb saw her father, William L. McKnabb, and her sister, Faye Jean Zander, leave together in a 1954 Ford station wagon owned by the latter. Later that evening, between 9:30 and 10 p.m., Lester C. Kerwood, a truck driver with 18 years' experience, was driving a loaded truck from Mojave going towards Santa Maria. He was driving south on Highway 6 near Ward Road. The driver's seat in this truck was about 6½ feet above the roadway. While operating his truck, Mr. Kerwood witnessed an accident involving two vehicles. They were both traveling north. The first vehicle to come into his view was a Ford station wagon proceeding at 50 to 55 miles per hour. Follow-

ing the Ford was an Oldsmobile traveling, in his opinion, at 80 miles per hour. The basic speed limit in this area was 55 miles per hour. This witness testified that as the Ford station wagon passed the cab of the truck, the Oldsmobile was "right on him." The truck was 59 feet 4 inches long. Believing that the Oldsmobile had no room to "get by" the station wagon, Mr. Kerwood pulled his truck off to the side of the road. As the witness saw the Ford pass his truck, he looked back, heard the collision and saw one of the vehicles "rolling through the air." The impact occurred immediately after the Ford had passed the cab of the truck.

The truck driver did not hear the sound of brakes. The Oldsmobile, still going 80 miles per hour, struck the Ford station wagon in the rear, both cars went through a fence, the Ford turning over sideways. In the Ford at the time of the accident were Faye Jean Zander and William L. McKnabb, both of whom died as the result of injuries sustained in the accident.

The headlights and the taillights of the Ford were operating until the collision; the road and the weather were "fair"; the visibility was "very good."

When he witnessed the accident, Mr. Kerwood was 40 feet away. He stopped his truck, set out flares, and "set out to get help and to see what was wrong." Fifteen or 20 minutes later, the highway patrol arrived.

Viewing the scene, Mr. Kerwood found a man 30 to 40 feet from the Ford who appeared unconscious. He saw a woman 40 to 50 feet from the Ford who appeared to be dead. There were two occupants in the Oldsmobile; the defendant was in the driver's seat and was conscious, as was his passenger.

Charles L. Evans, a highway patrolman, arrived at the location of the accident at 10:40 p.m. When he arrived, the defendant was being put into an ambulance. No sobriety test was given to him due to the nature of his injuries. He was bleeding from the mouth, his teeth were knocked out, and from his breath there emanated the odors of "strong alcohol —blood."

The defendant was taken to the hospital for treatment, and with his consent blood was withdrawn from him for a blood alcohol test.

Dr. Strawn, attending physician at the Antelope Valley Hospital in Lancaster, withdrew a sample of the appellant's

blood for the blood alcohol test at one minute past midnight on the 11th of May, 1956.

Martin Klein, a forensic chemist, who was qualified as an expert chemist at the trial, examined the appellant's blood and discovered it to contain .19 per cent of alcohol by weight. He stated that the oxidation of ethyl alcohol to carbon dioxide and water produces a reduction in the amount of alcohol in the blood at the rate of .015 per cent per hour or .03 for two hours, and that if no alcohol were consumed in the interim, the amount of the alcohol in the blood of a person at a time two hours prior to the taking of the sample would be .03 higher. The accident had occurred approximately two hours prior to the taking of the sample.

In the opinion of Mr. Klein, a person having an alcohol level of .15 per cent or higher would be under the influence of alcohol. That one having an alcohol level of .20 per cent would be intoxicated; and that a person with the alcohol level of .22 would be under the influence and intoxicated.

### THE DEFENSE

Max Scollin testified that he saw defendant on the night in question at about 8 p.m. in Jerry's Café; that defendant consumed one bottle of beer; that they left the café in defendant's automobile with the latter driving and the witness occupying the front seat. That defendant was watching the road ahead and that there was nothing "unusual" about his speed; that enroute they stopped at another café where they each had "one beer." That they remained at the latter café about 20 or 25 minutes. That the traffic was "very light." They stopped at another place for 15 or 20 minutes during which time defendant again consumed "one beer." They made no further stops prior to the accident. The witness testified that defendant was driving between 50 and 65 miles per hour. With reference to defendant's sobriety, this witness testified:

"Q. Now, you have seen people under the influence of alcohol before, have you, Mr. Scollin?

"A. Yes, sir.

"Q. You work in a bar. You know what somebody looks like when they are under the influence, don't you?

"A. I do.

"Q. With regard to Mr. Markham's sobriety that evening, do you have an opinion as to his sobriety that evening that you were driving with him?

"A. Yes, sir, I would say he was sober."

This witness testified further that prior to the accident, he saw no vehicle ahead, nor did he see any taillights on the road in front of the automobile in which he was riding.

As a witness in his own behalf, defendant testified that he was arrested some nine days after the accident. That on the night here in question he met the witness, Max Scollin, at Jerry's Café where they had a bottle of beer. That he and Mr. Scollin left in the former's automobile for Palmdale. That he (defendant) was driving. That they made two stops enroute and at each stop consumed a bottle of beer apiece. That he "felt no effect" from the beer, and was sober. He testified that his speed on the highway varied from 50 to 65 miles per hour "off and on, up and down." That when he went into a curve after passing a truck coming in the opposite direction, "his lights picked up a car right in his lane of traffic"; that when his lights "picked up this car right in my lane of traffic . . . I was so close on it that I didn't have time to do anything, and I hit it. I couldn't even swerve right then. It was the car that I hit. Because, it was dark, and it just picked it up, and I was that close I hit it, and I didn't know exactly what it was there. I was knocked, not unconscious, but I don't think I was—I was beat up pretty bad." That the vehicle ahead of him, ". . . didn't have any lights on, sir, that I could see at all." The defendant testified that he allowed the doctor to make the blood test because he desired to prove that he was not under the influence of liquor while driving his automobile.

In rebuttal, Officer Anderson of the State Highway Patrol testified that when he accompanied defendant to Newhall there was considerable conversation between them and " . . . the gist of the conversation was that the impact occurred almost simultaneously with the viewing of the vehicle." In answer to a question, "Did he also tell you in that conversation that he didn't see any tail lights on that car?" the witness answered, "He said he recalled seeing nothing, just a split second before the impact."

As his first ground for reversal of the judgment, appellant contends that the court committed prejudicial error in refusing on its own motion to give certain instructions on the so-called "two reasonable theories." Appellant bases his claim in this regard upon the contention that the prosecution relied upon circumstantial evidence for a conviction, viz., the conditions of the highway, the marks and debris thereon, and the speed of appellant's automobile. The latter, there-

fore, insists that although he made no request for such an instruction, the court on its own motion, should have admonished the jury that "If the evidence in this case (as to any particular count) is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which will admit of the defendant's innocence, and reject that which points to his guilt. You will notice that this rule applies only when both of the two possible opposing conclusions appear to you to be reasonable. If, on the other hand, one of the possible conclusions should appear to you to be reasonable and the other to be unreasonable, it would be your duty to adhere to the reasonable deduction and to reject the unreasonable, bearing in mind, however, that even if the reasonable deduction points to defendant's guilt, the entire force must carry the convincing force required by law to support a verdict of guilt." In his contention appellant, however, ignores the testimony of Mr. Kerwood, the truck driver, as to the speed of the former's vehicle. As to the speed of appellant's automobile this was direct evidence (Code Civ. Proc., § 1831). Mr. Kerwood's testimony was that of an eye witness to a physical fact, to wit, speed, and that was direct evidence. Testimony as to the marks and debris upon the highway amounted only to corroborative evidence concerning the accident and supported the direct testimony of the truck driver as to the speed at which appellant was driving.

When a case rests entirely or chiefly upon circumstantial evidence it is both proper and desirable that some admonition be given the jury concerning the foregoing rule of law. But where, as here, the prosecution relied upon direct evidence as to speed and other circumstances concerning appellant's conduct in the driving of his automobile, and the circumstantial evidence was merely corroborative of the direct evidence, an instruction on the law of circumstantial evidence is not required, and indeed, should not be given. As was said in *People* v. *Lapara*, 181 Cal. 66, 70 [183 P. 545] : "It is not now open to question that in a criminal case in which the prosecution relies for conviction upon direct evidence, the circumstantial evidence, if any, being merely incidental to and corroborative of the direct evidence, an instruction on the law of circumstantial evidence need not be given, and that, in such case, it should not be intimated to the jury that

the case of the people is one of circumstantial evidence. (*People* v. *Lonnen*, 139 Cal. 634 [73 P. 586] ; *People* v. *Burns*, 121 Cal. 586 [53 P. 1096] ; *People* v. *Holden*, 13 Cal.App. 354 [109 P. 495].) The reason for the general rule in this behalf is to be found in the danger of misleading and confusing the jury where the inculpatory evidence consists wholly or largely of direct evidence of the crime. In such cases, as courts have repeatedly pointed out, it would be most mischievous to intimate to the jury that the prosecution was relying for a conviction upon circumstantial evidence. (Citing cases.)'' (See also *People* v. *Jerman*, 29 Cal.2d 189, 197 [173 P.2d 805] ; *People* v. *Alexander*, 92 Cal.App.2d 230, 235 [206 P.2d 657].)

Appellant contends further that the announced results of the blood test were utilized to convict him (under Count I) and that testimony as to the results of such test amounted only to circumstantial evidence of his intoxication, and that the error of the court in refusing to give the foregoing instruction was therefore aggravated. In the case at bar, a forensic chemist testified that according to the test he made of the appellant's blood, the appellant was, two hours prior to the test (that is, at the time of the accident), under the influence of intoxicating liquor.

In *Lawrence* v. *City of Los Angeles*, 53 Cal.App.2d 6, 9, [127 P.2d 931], the court, in a footnote, citing authorities, said : ''It appears to be the consensus of the medical profession that when the blood alcohol concentrate of the driver of an automobile is 0.15% (by weight) such fact is conclusive evidence that the driver is under the influence of alcohol.'' In the recent case of *People* v. *Duroncelay*, 48 Cal.2d 766 [312 P.2d 690] (June 21, 1957), there is language at p. 772 that would seem to give to testimony of the results of blood alcohol tests the dignity of direct evidence. In the case just cited, the court said : ''Defendant does not challenge the accuracy of the alcohol test, and it merits emphasis that, while the accounts of eyewitnesses are often uncertain and conflicting on the issue of intoxication, blood alcohol tests are so subject to reliable scientific analysis that 23 states have enacted statutes sanctioning the use of such tests. (See *Breithaupt* v. *Abram*, 352 U.S. 432 [77 S.Ct. 408, 1 L.Ed.2d 448, 451-452, fn. 3].) Nor should it be ignored that a test of this kind may serve to exonerate, as well as convict.''

We are satisfied that under the evidence presented in the instant case, the court was not required to give, on its own

motion, the "two reasonable theories" instruction applicable to cases wherein the prosecution relies basically upon circumstantial evidence for a conviction.

It is next contended by appellant that the court erred to his prejudice in giving the following instruction: "You are further instructed that regardless of any alleged or proven violation of the provisions of the Vehicle Code with reference to the operation of a vehicle, a person driving or operating a vehicle may be guilty of manslaughter in the commission of a lawful act which might produce death, in an unlawful manner, such for example, as operating and driving a vehicle while acting without due caution and circumspection as a result of which death is caused to another. (*People* v. *Wilson,* 193 Cal. 512 [226 P. 5])." It is urged that, "The vice of the complained instruction lies in the fact that it tells the jury that operating and driving a vehicle without due caution and circumspection is manslaughter if one is killed as a result.

"The motor vehicle, however, is not dangerous in itself, nor dangerous in its use. It only becomes dangerous in itself or its use if driven in a dangerous manner."

Section 192, subdivision 3a of the Penal Code states that the offense of manslaughter is committed by one in the driving of an automobile resulting in the death of a human being, when, "In the commission of an unlawful act, not amounting to felony, with gross negligence; or in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence."

■ With regard to instructions given in a case charging manslaughter, and where death ensued as a result of the driving of an automobile by the accused, the court said in the case of *People* v. *Marconi,* 118 Cal.App. 683, 688, 689 [5 P.2d 974]: ". . . The instructions given fairly express the rule which now obtains in this state, 'that when a person is doing anything dangerous in itself, *or has charge of anything dangerous in its use, and acts with reference thereto without taking those proper precautions* which a person of ordinary prudence would have used under the circumstances and the death of another results therefrom, his act or neglect is a criminal act against the person so killed even though his negligence does not amount to a wanton or reckless disregard of human safety or life.' (Citing cases.)" (Emphasis added.)

In the case of *People* v. *Pociask,* 14 Cal.2d 679, 684 [96

P.2d 788], involving negligent homicide occasioned by the driving of an automobile, our Supreme Court said:

"In the case of *People* v. *Wilson*, 193 Cal. 512 [226 P. 5], the charge of manslaughter also arose out of the negligent driving of an automobile. This court discussed the question of·what want of due caution and circumspection is required to constitute criminal negligence. After noting the remarks of this court on denying the petition for hearing in the Seiler case, *supra*, it was said: 'The proper rule deducible from the cases cited in the note above referred to (note following report of *Johnson* v. *State*, 66 Ohio St. 59 [63 N.E. 607, 90 Am.St.Rep. 564], in 61 L.R.A. 277), would seem to be this: That when a person is doing anything dangerous in itself, or has charge of anything dangerous in its use, and acts with reference thereto without taking those proper precautions which a person of ordinary prudence would have used under the circumstances and the death of another results therefrom his act or neglect is a criminal act against the person so killed *even though his negligence does not amount to a wanton or reckless disregard of human safety or life.* (Citing cases.)'" (Emphasis added.) (See also *People* v. *Freudenberg*, 121 Cal. App.2d 564, 592 [263 P.2d 875].) The instruction complained of in the case now engaging our attention is in conformity with the rules enunciated in the cases just cited and was properly given.

As his next ground for a reversal of the judgment, appellant earnestly asserts that the evidence is insufficient to show a violation of section 501 of the Vehicle Code as charged in Count I of the information. That section denounces as a felony the action of any person who ". . . while under the influence of intoxicating liquor, drives a vehicle and when so driving does any act forbidden by law or neglects any duty imposed by law in the driving of such vehicle, which act or neglect proximately causes bodily injury to any person other than himself. . . ."

██ Section 501 of the Vehicle Code was designed to protect the public from the menace of automobiles operated upon the public highway with inadequate or no efficient control, in a world of traffic difficult of management under normal conditions, and should be liberally construed to effect its purpose. ██ We are persuaded that in prosecutions under this statute it is not necessary to prove any specific degree of intoxication, but that in each case where a person is charged as is appellant, with a violation of section 501 of the Vehicle

Code, the question is whether the accused was "under the influence of intoxicating liquor," and that is a question of fact to be determined by the court or jury from all the proven circumstances of the case. Appellant takes the position that only where there is testimony as to the sobriety of a defendant, by opinion of others, and symptoms, and as to his general reactions, can evidence of the alcohol in the blood test be used, and then only as corroborative evidence to show the cause of the condition otherwise testified to. That, quoting from "The Use of Chemical Tests for Alcoholic in Traffic Law Enforcement" by Glenn C. Forrester, Ph.D. (1950), p. 75, ". . . and the value of the blood level of alcohol alone should never determine guilt, but be used primarily for corroborative purposes." Appellant cites no authority emanating from the courts of this country in support of his contention and relies solely upon a case decided by the Supreme Court of Canada (*Weir* v. *Dickson* (1943), 2 Dominion Law Reports, 15, 21).

We are satisfied that the prevailing rule in this and many other states is, ". . . that expert testimony is admissible where the conclusions to be drawn by the jury depend on the existence of facts which are not common knowledge and which are peculiarly within the knowledge of men whose experience or study enables them to speak with authority thereon, and in those cases in which the conclusions to be drawn from the facts stated, as well as knowledge of the facts themselves, depend upon professional or scientific knowledge or skill not within the range of ordinary training or intelligence. In such cases not only the facts but the conclusions to which they lead, may be testified to by qualified experts. Of course any such opinion may be accepted or rejected by the jury. (Citing cases.)" (*People* v. *Tucker*, 88 Cal.App. 2d 333, 339 [198 P.2d 941].) No distinction is made by the law in weighing evidence, between expert testimony and evidence of other character (10 Cal.Jur. § 232, p. 974; *Rolland* v. *Porterfield*, 183 Cal. 466, 469 [191 P. 913]; *Estate of Blake*, 136 Cal. 306, 309 [68 P. 827, 89 Am.St.Rep. 135]).

And, the weight to be given such evidence is for the jury's determination, and not an appellate tribunal (*People* v. *Tucker*, *supra*, p. 340). In the case just cited it was held that expert testimony analogous to that given in the instant case was admissible; that not only the facts of the test but the conclusions to be drawn therefrom were admissible and that the jury could accept or reject such testimony. The court held further, at page 340, that the fact

that the defendant's car was being driven on the wrong side of the road was some evidence of the condition of the driver, and that such a fact combined with the expert's testimony was sufficient to establish that the defendant was, at the time of the accident, under the influence of intoxicating liquor. (See also *Lawrence* v. *City of Los Angeles, supra,* pp. 8, 9, including footnote on p. 9; *People* v. *Ravey,* 122 Cal.App.2d 699, 703, 704 [265 P.2d 154]; *People* v. *Kiss,* 125 Cal.App.2d 138, 141 [269 P.2d 924].)

In the case now before us, forensic chemist Martin Klein testified that he examined appellant's blood which had been taken from the latter two hours after the accident, and found it to contain .19 per cent of alcohol by weight. He stated that the oxidation of ethyl alcohol produces a reduction in the amount of alcohol in the blood at the rate of .015 per cent per hour; that if no alcohol were consumed in the interim, the amount of alcohol in the blood in a person at a time two hours prior to the taking of the sample would be .03 higher; that one having an alcohol level of .15 per cent would be under the influence of alcohol; and that one having an alcohol level of .20 per cent would be intoxicated.

Since the blood test was taken two hours subsequent to the accident, the amount of alcohol in the appellant's blood at the time of the accident would have been approximately .22 per cent (.19 per cent by test and .03 per cent to allow for oxidation). Furthermore, the evidence shows that appellant herein was driving at least 80 miles per hour; that he was only 30 feet behind a car going 50 miles per hour at the time he passed Mr. Kerwood's truck; that he was still going 80 miles per hour when he hit the car in the rear, and that there was emanating from him a strong odor of alcohol.

The appellant admitted that on the evening of the accident he had had "a beer" at Jerry's Café; that he left Jerry's Café at 8 or 8:30 and drove to a place in which he had "another beer"; then he drove to another place in which he had a "third beer"; and that 10 or 15 miles from his last stop the accident occurred.

Appellant contends there was no showing that he was not given alcohol medicinally between the time of the accident and the time of the taking of his blood. Neither was there any showing that he was. And, in the present case no objection was made by appellant to the admissibility of the blood alcohol test on the ground that a proper foundation had not been laid or on any other ground. Thus, any objec-

tions the appellant might have had were waived. (*People* v. *Showers,* 90 Cal.App.2d 248, 255 [202 P.2d 814]; *People* v. *Dessauer,* 38 Cal.2d 547, 552 [241 P.2d 238]; *People* v. *Simeone,* 26 Cal.2d 795, 804 [161 P.2d 369].)

 The testimony of the forensic chemist coupled with the foregoing testimony as to speed while following within 30 feet behind a much slower moving vehicle at a point at which the other lane of a two-lane highway was occupied by a 59-foot truck, appellant's consumption of intoxicating liquors as well as a strong odor of alcohol on his breath was sufficient to warrant the jury in concluding that at the time of the accident, appellant was "under the influence" of intoxicating liquor.

Finally, appellant insists that the evidence was insufficient to sustain his conviction for violations of section 192, subdivision 3a of the Penal Code (manslaughter in the driving of an automobile) in that the evidence was insufficient to prove gross negligence. This section provides that when in the driving of a vehicle there is a commission of an unlawful act not amounting to a felony, with gross negligence, or the commission of a lawful act, which might produce death, in an unlawful manner and with gross negligence and which as a result produces the killing of a human being, the crime of manslaughter has been consummated.

 Whether there has been such a lack of care as to constitute gross negligence is a question of fact for the determination of the trier of fact. (*People* v. *Flores,* 83 Cal. App.2d 11, 14 [187 P.2d 910]; *Cooper* v. *Kellogg,* 2 Cal.2d 504, 511 [42 P.2d 59]; *Rees* v. *Chase,* 3 Cal.App.2d 127, 128 [38 P.2d 819]; *Goodwin* v. *Goodwin,* 5 Cal.App.2d 644, 646 [43 P.2d 332]; *Johnson* v. *Johnson,* 137 Cal.App. 701, 707 [31 P.2d 237]; *Meighan* v. *Baker,* 119 Cal.App. 582, 584-585 [6 P.2d 1015]; *Dahl* v. *Spotts,* 128 Cal.App. 133, 135 [16 P.2d 774]; *Anderson* v. *Ott,* 127 Cal.App. 122, 125-126 [15 P.2d 526]; *Hagen* v. *Metzger,* 130 Cal.App. 497, 499 [20 P.2d 117].) Appellant insists that while he was driving on the highway at a *good* rate of speed, the decedent's vehicle "loomed in front" of him as he made a slight turn and the accident ensued. That, under these facts, the case of the prosecution would show but *ordinary* and not *gross negligence.* It is argued that the negligence must be aggravated, culpable or gross. That is, the conduct of the driver must be such a departure from what would be the conduct of an ordinarily prudent or careful driver under the same circum-

stances as to evince a total disregard for human life or an indifference to consequences. The only California case cited by appellant in support of this contention is *People* v. *Young,* 20 Cal.2d 832, 838 [129 P.2d 353]. However, the cited case does not aid appellant because it refers to section 500 of the Vehicle Code which has since been repealed (Stats. 1943, ch. 421, § 1, p. 1959). Under the statute as amended in 1941, and under which amendment *People* v. *Young, supra,* p. 835, was decided, a violation of the section occurred ''when the death of any person . . . (was) caused by the driving of any vehicle with reckless disregard of, or wilful indifference to the safety of others.'' The court emphasized the importance of the 1941 amendment which changed ''in a negligent manner'' to ''reckless disregard of or wilful indifference to the safety of others.''

We are here concerned with the provisions of section 192, subdivision 3a of the Penal Code, and the immediate question presented is whether, under the facts here present, the duly constituted arbiters of the facts were legally justified in finding that appellant was guilty of ''gross negligence.'' ▮ That term has been repeatedly defined in the California cases as ''want of slight diligence,'' as ''an entire failure to exercise care, or the exercise of so slight a degree of care as to justify the belief that there was an indifference to the things and welfare of others,'' and as ''that want of care which would raise a presumption of the conscious indifference to consequences'' (*Krause* v. *Rarity,* 210 Cal. 644, 655 [293 P. 62, 77 A.L.R. 1327]; *Cooper* v. *Kellogg, supra,* p. 511; *Rees* v. *Chase, supra,* p. 128; *Goodwin* v. *Goodwin, supra,* p. 646). Section 192, subdivision 3a of the Penal Code provides in part that the offense of manslaughter is committed when the death of a human being is occasioned by the conduct of one driving a vehicle who commits an unlawful act not amounting to a felony, with gross negligence. It would unduly prolong this already lengthy opinion to again narrate the evidence heretofore set forth, and we will not do so. Suffice it to say that such evidence shows that appellant was guilty of three unlawful acts, not amounting to a felony. That is violation of section 502 of the Vehicle Code, driving while under the influence of intoxicating liquor; sections 510 and 511 of the same code, the basic speed law, and Vehicle Code, section 531, following another vehicle ''more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon, and the condition of the roadway.''

As to "gross negligence," there was substantial evidence that appellant while passing a truck 59 feet long, going in the opposite direction, was driving 80 miles an hour, and was only 30 feet behind the car in front of him. The car in front was only going 50 to 55 miles an hour. The highway upon which the appellant was traveling was only a two-lane highway; one lane in each direction. While passing the truck, the appellant would not have had the opportunity of crossing to the opposite lane in order to pass the car in front. The appellant was still going 80 miles an hour when he crashed into the Ford station wagon. Since the question of whether appellant was guilty of "gross negligence" was essentially one for determination by the jury, and after carefully reviewing the evidence, we cannot say that it was insufficient upon which to base the jury's conclusion in that regard.

For the foregoing reasons, the judgment is affirmed.

Doran, J., and Fourt, J., concurred.

A petition for a rehearing was denied September 10, 1957, and appellant's petition for a hearing by the Supreme Court was denied October 9, 1957. Carter, J., was of the opinion that the petition should be granted.