THE PEOPLE, Plaintiff and Respondent, v. JOHN PAUL
PFEFFER, Defendant and Appellant.

Goodman & Hirschberg and Stephen Scott King for De-
fendant and Appellant.

Stanley Mosk, Attorney General, and Arthur C. De Goede,
Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of convic-
tion of manslaughter (Pen. Code, § 192, subd. 3(a)).

In an information filed on March 28, 1963, in Los Angeles
County the defendant was charged with "... unlawfully ...
and without malice, while engaged in the driving of a vehicle

(on March 2, 1963) in the commission of a lawful act not amounting to a felony, with gross negligence'' killing Margaret Ruth Murello, the death ''being the proximate result of the driving of said vehicle by the said defendant at the time ...'' Defendant pleaded not guilty, a jury trial was waived and by stipulation the cause was submitted upon the testimony contained in the transcript of the preliminary hearing. The defendant was found guilty as charged. Proceedings were suspended, probation was granted for three years, some of the conditions being that defendant spend the first year in the county jail, pay any final judgment arising out of the matter, obey all laws and other pertinent conditions.

A resume of some of the facts is as follows: On March 2, 1963, at about 8:30 p.m. or later the defendant was at the Lafayette Hotel parking lot on Linden Avenue off Broadway in Long Beach. An employee of the parking lot heard a screeching of wheels and a crash and thinking there had been an accident he got into his car and went back to the alleyway. He saw a 1951 black Chevrolet which had gone through a chain which blocked off a driveway. There were marks on the Chevrolet. The attendant saw the defendant get out of the Chevrolet and walk towards the alleyway. The attendant asked the defendant if he had brought the car there and defendant replied, ''What car? No, I didn't bring no car in here.'' The attendant stated that the car had not been there earlier and inquired of defendant if he had a parking ticket. The defendant replied, ''A ticket? Oh, yes, I got a ticket,'' and he thereupon went to the car and brought therefrom a jar of money and returned to where the attendant was standing. The defendant had a strange look upon his face and acted strangely and seemed quite disturbed. The attendant smelled alcohol about the defendant and noticed that he had been drinking. His eyes seemed to be ''popping out'' as if he was frightened. Defendant told the attendant ''we can settle this.'' The attendant indicated that his property had been torn down and he would have to call the police. The defendant answered, ''Police? No, you won't have to call the police. We can just settle this between you and I'' whereupon defendant took some money from the jar. The attendant indicated that he did not operate the lot in such a fashion and that he would call the police whereupon defendant answered, ''Police? No, no police'' and jumped into the car and drove into a fence, backed up and drove into the fence again and then turned the car around and backed into the street. The

attendant got back into his automobile and drove it to the end of the alley to see if he could not stop defendant and tell him to remain there until the police arrived. The defendant was not stopped by the attendant and as defendant drove away the attendant saw him drive through a red traffic signal at Broadway and Elm.

Another person shortly thereafter came to the attendant and asked for the number of the Chevrolet car as there had been a near collision between the defendant's car and his at the time defendant was backing out from the parking lot.

A short time later, Mary Torres was driving north on Orange Avenue at the intersection of such street with Pacific Coast Highway and was in the process of making a left turn onto Pacific Coast Highway. She was hit by what looked to be a black or dark colored 1950 Chevrolet automobile which had run the red signal light at the intersection. The Chevrolet car did not slow up or stop. Mrs. Torres indicated that the driver was a young man.

George Murello, the husband of Mrs. Murello, the victim, had been driving their Rambler station wagon east on Willow Street and came to a stop on Willow where that street intersects with Lakewood. Mrs. Murello was seated in the front seat of the station wagon. When the signal light on Willow turned to green Mr. Murello proceeded into the intersection. The Chevrolet automobile was being driven at about 45 to 55 miles per hour by defendant going north on Lakewood. He went through the red light into the intersection and collided with the station wagon. Mrs. Murello died from a punctured aorta and liver, the direct result of the collision between the defendant's car and the Murello station wagon. After the accident an investigation took place and defendant was found slumped over the driver's wheel of the Chevrolet. No evidence was offered in behalf of the defendant.

 Appellant now asserts that the evidence is insufficient to establish that he was driving with gross negligence.

 In *People* v. *Costa*, 40 Cal.2d 160, 166 [250 P.2d 1], gross negligence is defined: "[1] 'Gross negligence has been repeatedly defined in the California cases as "the want of slight diligence," "an entire failure to exercise care, or the exercise of so slight a degree of care as to justify the belief that there was an indifference to the things and welfare of others," and "that want of care which would raise a presumption of the conscious indifference to consequences." ' (*Cooper* v. *Kellogg*, 2 Cal.2d 504, 510-511 [42 P.2d 59]; *Bar-*

*kis* v. *Scott,* 34 Cal.2d 116, 123 [208 P.2d 367]; *Weber* v. *Pinyan,* 9 Cal.2d 226, 232-233 [70 P.2d 183, 112 A.L.R. 407]; *Kastel* v. *Stieber,* 215 Cal. 37, 46-47 [8 P.2d 474]; *Krause* v. *Rarity,* 210 Cal. 644, 654-655 [293 P. 62, 77 A.L.R. 1327].)''
See also 1 Witkin, California Crimes, sections 345, 346, 347, 348 and 349.

We agree with the trial judge, the trier of fact, when at the conclusion of the hearing he said: "In the first instance, apparently running into a fence in a parking lot, a little later running through a red light and striking a woman's car, and then in this instance, excessive speed and running a red light and striking a car, the Court can hardly imagine anything that would constitute greater gross negligence." See *People* v. *Leitgeb,* 77 Cal.App.2d 764, 769 [176 P.2d 384]; *People* v. *Roerman,* 189 Cal.App.2d 150, 159 [10 Cal.Rptr. 870]; *People* v. *Markham,* 153 Cal.App.2d 260, 273 [314 P.2d 217].

So far as this record goes the defendant made no attempt to slow down and stop when the red signal light was against him. The appellant saw fit not to testify and as a consequence we do not have the benefit of his understanding of what occurred. The course of action followed by the defendant at the time in question demonstrates a complete failure on his part to exercise any care and shows a conscious indifference to the consequences which might follow going through a red signal light at high speed—he obviously had no control over his car and seemingly cared nothing at all for the right of way of others upon the road at the time—he exercised no vigilance and seemingly did not anticipate that there might well be automobiles with passengers therein traveling on Willow Street across Lakewood with the green signal lights. If there was anything present to obstruct the view of appellant, or any excuse at all for that matter, we have not heard of it from the appellant or any witness who observed what occurred. Driving at excessive speed, taking chances at an intersection, inattention to driving or similar acts, coupled with other circumstances as here present, constitute gross negligence.

There is no appeal from an order denying a motion for a new trial. The purported appeal from that order is dismissed.

The judgment of conviction and the order imposing probation are affirmed.

Wood, P. J., and Lillie, J., concurred.