Filed 11/28/22 P. v. Hyce CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C092322 |
| Plaintiff and Respondent, | (Super. Ct. No. 16FE022561) |
| v. | |
| RAUL ALAN HYCE, | |
| Defendant and Appellant. | |

Defendant Raul Alan Hyce contends there was insufficient evidence to support the jury's finding that, in committing vehicular manslaughter while speeding through a red light, he acted with gross, as opposed to ordinary, negligence.

In supplemental briefing, the parties agree Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill No. 567) warrants remand for reconsideration of defendant's upper term sentence. We agree with the parties and remand for resentencing and correction of a clerical error.

1

In October 2016, defendant was driving at speeds of approximately 53 to 55 miles per hour in a zone with a speed limit of 30-miles-per-hour Defendant ran a red light, struck the victim's car, and killed her. He did not brake or change direction before the crash. Defendant had suffered a concussion from the collision; he fled the scene of the accident.

Defendant was charged with gross vehicular manslaughter (Pen. Code, § 192, subd. (c)(1); count one)[1] while running a red light and driving at an unsafe speed in violation of the basic speed law (Veh. Code, §§ 21453, subd. (a), 22350); vehicular manslaughter while intoxicated (§ 191.5, subd. (b); count two); and leaving the scene of an accident resulting in injury to a person without assisting the victim or reporting the accident to police (Veh. Code, § 20001, subd. (b)(2); count three).

At trial, Detective William Connor, who investigated the accident, testified as to his conclusion that, leading up to the crash, defendant violated the basic speed law. According to Detective Connor, surveillance video showed that "several other vehicles [were] driving in that same path of travel and they were going at a significantly slower speed than [defendant's] pickup truck. All of the other vehicles were going slower than the pickup truck in that area. And they were all going at approximately what I would then assume to be the speed limit, although I'm not able to put a number on those speeds that way." He further testified that entering an intersection against a red light is unsafe at any speed. An eyewitness who was a commercial trucker testified he became alarmed when he saw defendant driving "super fast" as he came "smashing through" the red light.

The jury was given an instruction on the basic speed law which stated: "The speed of travel, alone, does not establish whether a person did or did not violate the basic

---

[1] Further undesignated statutory references are to the Penal Code.

2

speed law. When determining whether the defendant violated the basic speed law, consider not only the speed, but also all the surrounding conditions known by the defendant and also what a reasonable person would have considered a safe rate of travel given those conditions." (CALCRIM No. 595.)

The jury found defendant guilty on counts one and three, and not guilty on count two.

The presentencing probation report set forth defendant's criminal history as including the following: In 1984, the juvenile defendant was convicted of stealing a car and leaving the scene of an accident resulting only in damage to property (§ 484; Veh. Code, §§ 20002) and of first degree murder with personal use of a gun in 1985 (§§ 187, subd. (a), 12022, subd. (a)). As an adult, he served a prison term for felony possession of a controlled substance in 1993. (Health & Saf. Code, § 11378.) He was also convicted of several misdemeanors, including alcohol-related reckless driving in 1997 (Veh. Code, § 23103.5), driving under the influence of alcohol twice in 2001 and again in 2012 (*id.*, § 23152), driving without a license and leaving the scene of an accident resulting only in damage to property in 2015 (*id.*, §§ 14601, 20002), and violating the basic speed law in 2017.

As a result of the 2015 offense, defendant was serving his fifth grant of informal probation, a three-year term, when he killed the victim. In recommending that defendant be denied probation, the report noted under California Rules of Court, rule 4.421 that defendant's prior convictions as an adult and sustained petitions in juvenile delinquency proceedings were numerous (*id.*, (b)(2)), he served a prior prison term (*id.*, (b)(3)), was on informal probation when the crime was committed (*id.*, (b)(4)), and his prior performance on parole appeared to have been unsatisfactory (*id.*, (b)(5)). None of these aggravating factors were pleaded and presented to the jury or the court for adjudication beyond a reasonable doubt. The probation report recommended sentencing defendant to

the upper term for gross vehicular manslaughter because his prior convictions were numerous and there were no mitigating circumstances.

In July 2020, the trial court denied probation and sentenced defendant to the upper term of six years on count one and a consecutive one year (one-third the midterm) on count three. The court selected the upper term based on defendant's prior prison term (Cal. Rules of Court, rule 4.421(b)(3)) and the fact that defendant was on probation when he committed the offense (*id*., (b)(4)), with no additional evidence presented at the sentencing hearing.

Defendant timely appealed; after multiple granted requests by defendant to continue the briefing schedule, as well as delays for record augmentation, the case was initially fully briefed on May 16, 2022. We requested supplemental briefing on Senate Bill No. 567 as applied to defendant; that briefing was completed on August 2, 2022, and the case was assigned to this panel as presently constituted on September 26, 2022. Defendant requested argument and the matter was heard on November 16, 2022.

## DISCUSSION

### I

### *Sufficiency of the Evidence*

Defendant contends the evidence is insufficient to support the jury's finding he acted with gross negligence. Defendant argues that his driving was neither erratic nor egregious; that running the red light reflected, at most, momentary inattentiveness; and that the prosecution failed to meet its burden on the other predicate offense, the basic speed law, which provides: "No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for . . . the traffic on . . . the highway, and in no event at a speed which endangers the safety of persons or property." (Veh. Code, § 22350.) Defendant argues the prosecution, in effect, relied on the

4

uncharged infraction of driving in excess of the posted speed limit. (*Id.*, §§ 22351 & 22352.)

"In a sufficiency of the evidence claim, a reviewing court determines whether a rational fact finder could have concluded defendant was guilty beyond a reasonable doubt. [Citation.] 'Reversal on this ground is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." [Citation.]' [Citation.] Evidence is substantial when it is reasonable in nature, credible, and of solid value. [Citation.] We consider the evidence, including the reasonable inferences drawn from the evidence, in the light most favorable to the judgment. [Citation.] [¶] '[T]he finding of an operator's gross negligence in driving a motorcar, when supported by substantial evidence, is conclusive upon the reviewing court and can be reversed only when that court becomes convinced by the evidence that freedom from gross negligence was so clearly established that reasonable minds could not differ upon the question.' " (*People v. Nicolas* (2017) 8 Cal.App.5th 1165, 1171.)

Gross vehicular manslaughter is defined, in relevant part, as "driving a vehicle in the commission of an unlawful act, not amounting to a felony, and with gross negligence." (§ 192, subd. (c)(1).) "[T]he offense which constitutes the 'unlawful act' need not be an inherently dangerous misdemeanor or infraction. Rather, to be an 'unlawful act' within the meaning of section 192(c)(1), the offense must be dangerous under the circumstances of its commission." (*People v. Wells* (1996) 12 Cal.4th 979, 982, fn. omitted.) Here, defendant was found guilty of two predicate offenses: running a red light (Veh. Code, § 21453, subd. (a)) and violating the basic speed law (*id*., § 22350).

"Gross negligence is the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences." "The test is objective: whether a reasonable person in the defendant's position would have been aware of the risk involved." (*People v. Bennett* (1991) 54 Cal.3d 1032, 1036.) A finding of gross

5

negligence "may be based on the overall circumstances surrounding the fatality." (*Id.* at p. 1040.)

Evidence that defendant drove at an excessive speed, ran a red light, and made no attempt to avoid a collision supports the conclusion defendant acted with a conscious indifference to the consequences. In *People v. Eagles* (1982) 133 Cal.App.3d 330, the court upheld the jury's finding of gross negligence where the defendant was "traveling at speeds far in excess of the posted speed limit"--55 to 65 miles per hour in an area with a 35-mile-per-hour speed limit--and "did not attempt to stop at the red light." The court concluded, "[w]e can hardly imagine a more compelling showing of gross negligence." (*Id.* at p. 338, citing *People v. Pfeffer* (1964) 224 Cal.App.2d 578, 580-581.) In *People v. Leitgeb* (1947) 77 Cal.App.2d 764, the court did not harbor "the least doubt . . . appellant was guilty of gross negligence" when he veered across a corner at a speed of 25 to 40 miles per hour and hit a victim standing in a street car safety zone; he "was not slowing down, nor did he have control of the car that would have enabled him to stop quickly if it should become necessary to do so in order to avoid an accident." (*Id.* at p. 769.)

Viewed in the light most favorable to the judgment, substantial evidence supports the jury's conclusion here that defendant acted with gross negligence. Detective Connor testified not just that defendant violated the speed limit but that he drove significantly faster than surrounding vehicles, which in Detective Connor's opinion was unsafe under the circumstances. This testimony was corroborated by the commercial truck driver who saw defendant driving "super fast" as he "smash[ed] through" the red light. Detective Connor also opined that entering the intersection against the red light was unsafe at any speed. The jury was entitled to consider "the *manner* in which the defendant operated the vehicle, that is, the overall circumstances (rather than the mere fact) of the traffic law violation." (*People v. Von Staden* (1987) 195 Cal.App.3d 1423, 1427.) Thus, substantial evidence supports the jury's conclusion defendant also violated the basic speed law. A reasonable person in defendant's position would have been aware that speeding creates a

6

high risk of death or great bodily injury by making it more difficult to recognize and respond safely to traffic conditions as they arise. This disregard for the safety of others, together with his inattention to the red light and victim's car as it entered the intersection, demonstrates defendant exercised so slight a degree of care as to rise to the level of conscious indifference.[2] That defendant's driving could have been *more* egregiously unsafe does not persuade us otherwise.

Accordingly, we reject defendant's insufficiency of the evidence claim.

II

*Upper Term*

In supplemental briefing, the parties agree Senate Bill No. 567's changes to triad sentencing guidelines warrant remand for resentencing of defendant's upper term.

Under Senate Bill No. 567, a trial court "may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).) Additionally, "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)

We agree with the parties that Senate Bill No. 567's amendments to section 1170, subdivision (b) are ameliorative and, under *In re Estrada* (1965) 63 Cal.2d 740, apply retroactively to defendant's nonfinal judgment. (*People v. Zabelle* (2022) 80 Cal.App.5th

---

[2] At oral argument, defendant's appellate counsel requested an opportunity to supplementally brief the issue of whether defendant's postaccident conduct could properly be considered as evidence of gross negligence at the time of the accident. Because we do not consider defendant's postaccident conduct in our analysis of the sufficiency of the evidence as to gross negligence, we deny the request for briefing.

7

1098, 1108-1109.) We also agree that the trial court, by relying on circumstances in aggravation that were not stipulated to, found true by a jury, or proven by certified records, imposed defendant's upper term sentence in a manner that no longer complies with newly amended section 1170, subdivision (b).

Although in declining to accept the Attorney General's concession, our dissenting colleague notes that defendant's briefing at sentencing "disputed only an aggravating factor not relied on by the" trial court, whether defense counsel's briefing also relied on the accuracy of the probation report is not the issue here. At issue is whether the *trial court* relied on the unproven allegations in the report, which it clearly did here, and as it was permitted to do at the time of sentencing. Various statements and omissions in counsel's briefing and argument do not constitute the proof now required to impose an upper term sentence under the new legislation, particularly when, as here, defendant's incentive and opportunity to contest the probation report "were not necessarily the same as they would have been had the aggravating circumstances been tried to a jury." (*People v. Sandoval* (2007) 41 Cal.4th 825, 839.) Further, "[i]f the record is insufficient to support a trial court's findings about a defendant's criminal history, we will not presume the existence of extrarecord materials, however likely they are to exist, to address this insufficiency." (*People v. Zabelle, supra,* 80 Cal.App.5th at p. 1115, fn. 6.) Given the trial court's now-improper reliance on the information contained only in the probation report and the Attorney General's concession that remand is appropriate, we will remand the matter for a full resentencing.

III

*Clerical Error*

We note the abstract of judgment erroneously indicates defendant's conviction on count three was for a violation of Vehicle Code section 20002, subdivision (b)(2), rather than Vehicle Code section 20001, subdivision (b)(2), as reflected in the oral

8

pronouncement of judgment and the minutes. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185.) On remand, the trial court should correct this error.

## DISPOSITION

The case is remanded for resentencing as described by this opinion; the judgment is otherwise affirmed. The trial court is directed to ensure the new abstract of judgment properly reflects defendant's conviction on count three. (Veh. Code, § 20001, subd. (b)(2).)


　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　Duarte, J.


I concur:


　　　/s/
　Hoch, J.

HULL, J., Concurring and Dissenting.

I concur in Parts I and III of the majority opinion. As to Part II, I dissent. As to Part II, I find any error by the trial court in sentencing defendant to the upper term of imprisonment which "error" was brought about by the Legislature's changes in the law subsequent to the original sentencing in this matter to be harmless. I would affirm the judgment and sentence.

Notwithstanding the Attorney General's concession, I find the error harmless under the two-step analysis set forth in *Zabelle*: (1) whether the court *could* impose the upper term under the Sixth Amendment; and (2) whether the court *would* impose the term under Penal Code section 1170. (*People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1112 (*Zabelle*).) I review the first question under the standard described in *Chapman v. California* (1967) 386 U.S. 18 and the second under the standard described in *People v. Watson* (1956) 46 Cal.2d 818. (*Zabelle*, at pp. 1112-1113.)

Here, the trial court relied on two aggravating circumstances in imposing the upper term: defendant's prior prison term and the fact that the instant offense was committed while defendant was on probation. I am mindful that defendant's incentive and opportunity to contest the probation report "were not necessarily the same as they would have been had the aggravating circumstances been tried to a jury." (*People v. Sandoval* (2007) 41 Cal.4th 825, 839.) Furthermore, "[i]f the record is insufficient to support a trial court's findings about a defendant's criminal history, [I] will not presume the existence of extrarecord materials, however likely they are to exist, to address this insufficiency." (*Zabelle, supra,* 80 Cal.App.5th at p. 1115, fn. 6.) In this case, however, the aggravating factors at issue and absence of mitigating factors were *affirmatively acknowledged as accurate* in defendant's briefing, which disputed only an aggravating factor not relied on by the court. The underlying accuracy of the factors was again affirmed during the sentencing hearing wherein defense counsel argued against imposition of the upper term because defendant's adult criminal history consisted of

1

seven misdemeanors—leading to defendant's most recent term of probation for yet another vehicular offense the year before he killed the victim—and a felony conviction that was nearly 25 years old. Neither factor rested on "a somewhat vague or subjective standard" (*People v. Sandoval, supra,* 41 Cal.4th at p. 840), suggesting any possibility a jury would arrive at a different assessment. On this record, I have no doubt that a jury would have found true beyond a reasonable doubt the aggravating circumstances the court relied on. (*Id.* at p. 839.) Under the Sixth Amendment, therefore, the court *could* impose the upper term. And because the court did not consider improper factors, I see no reasonable probability that it *would* select a lesser term on remand. (See *Zabelle, supra,* 80 Cal.App.5th at p. 1113.)

Therefore, the trial court's reliance on aggravating factors in a manner retroactively rendered error by Senate Bill No. 567 (2021-2022 Reg. Sess.; Stats. 2021, ch. 731) was harmless.


                                                         _____/s/_____

                                                     HULL, Acting P.J.