[No. D003541. Fourth Dist., Div. One. Nov. 24, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH HARRIS STANLEY, Defendant and Appellant.

**[Opinion certified for partial publication.]**[1]

---

[1]Pursuant to California Rules of Court, rules 976.1 and 976(b), this opinion is certified for publication with the exception of section II.

**COUNSEL**

David H. Askey, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, M. Howard Wayne and Jesus Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WIENER, J.**—Defendant Kenneth Stanley appeals his conviction on the charges of vehicular manslaughter with gross negligence (Pen. Code, § 192, subd. (c)(3))[2] and felony drunk driving (Veh. Code, § 23153, subds. (a) and (b)). We reverse the manslaughter conviction and in other respects affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Stanley is a Lance Corporal in the United States Marine Corps and was, at the time of this incident, stationed at Camp Pendleton. On Friday, July 13, 1985, Stanley and three friends, also marines, left Camp Pendleton to begin a weekend driving excursion around Southern California. The trip included stops in Big Bear and Palm Springs. Stanley drove the entire trip. Late Sunday afternoon the foursome began the drive back to Camp Pendleton. They had been drinking beer throughout the day and at about 5 p.m. purchased another 12 pack to drink on the drive back.

At approximately 7 p.m., Stanley was driving west on Highway 76 when he approached a curve near the Monserate Hill Road intersection. As the

---

[2]Unless otherwise indicated, all statutory references are to the Penal Code. Whenever possible when referring to statutory subparts, we omit repetition of the word "subdivision."

car exited the curve, it began to veer toward the right shoulder. Surprised, Stanley quickly turned the steering wheel to the left, and in doing so overcorrected, sending the car into a skid. Out of control, the car slid across the highway and over an embankment on the other side where it crashed into a boulder. The front seat passenger, James Wallis, was killed on impact. The other occupants of the vehicle suffered injuries of varying degrees.

Stanley was taken to the hospital at Camp Pendleton. A blood test was performed at approximately 8:53 p.m. which revealed a blood alcohol content of .20. An expert testified at trial that this test result indicated that Stanley's blood alcohol content at the time of the accident was somewhere between .18 and .23.

The speed limit for Highway 76 was 55 m.p.h. A sign at the beginning of the curve posted a suggested speed limit for the curve of 40 m.p.h. Stanley testified he negotiated the curve at 45 m.p.h. An accident expert for the highway patrol calculated Stanley's speed at 57.97 m.p.h. plus or minus 5 m.p.h. based on measurements of skid marks at the scene of the accident. An earlier calculation by the same officer had placed Stanley's speed at approximately 53.24 m.p.h. A defense expert testified he agreed with the officer's initial calculation.

## DISCUSSION

### I

The critical disputed issue in this case is whether Stanley's conduct amounted to gross negligence within the meaning of section 192(c)(3). During her closing argument, the deputy district attorney repeatedly suggested to the jury that it should consider the amount of alcohol in Stanley's system as evidence of his gross negligence. After discussing how most people have at some point been inattentive and therefore negligent while driving, she said: "But it rises to the level of gross negligence in this particular case *because of the amount of alcohol that this defendant has in his system.* Those people in that car didn't have a chance. [¶] Now it is true they could have made it all the way and nothing would have happened because plenty of people do. But he was confronted by a hazard that he wasn't able to deal with and *that is when the alcohol comes into play.*" (Italics added.) The same theme was echoed when she concluded her argument: "I want you to look at all the factors that make him grossly negligent, *the excess amount of alcohol,* the fatigue, his unfamiliarity with the road, his self-denial . . . coupled together with the fact that he voluntarily did all of this to himself. And he got behind the wheel of that car. And that's

where the gross negligence comes into play. Nobody put a gun to his head to drive that car. Nobody forced him to do it. At any point in time he could have said that I am too tired, too sleepy or something. But he never did. *He could have just said I am too drunk to drive*. But he never did. And the consequences of what occurred are very obvious." (Italics added.)

At no time did defense counsel object to the prosecutor's line of argument.

Following the return of the jury's verdict finding that Stanley was grossly negligent, the court expressed its concern the jury may have been misled by the prosecutor's argument explaining it believed the gross negligence had to relate to the manner in which the vehicle was operated and not to the fact of being intoxicated. The prosecutor representing the People, a different individual than the one who tried the case, agreed with the judge: "It is my understanding, although I have not looked at the vehicular manslaughter law recently, but it is my understanding that the gross negligence finding relates to the manner of the operation of the vehicle."

Defense counsel then moved for a new trial based on the misleading nature of the prosecutor's argument. After serious consideration, the trial court denied the motion. Although it concluded it was "highly probable" that the jury had been misled, the court felt in view of its intended disposition[3] and the fact that there was sufficient evidence of gross negligence apart from the level of alcohol that a new trial was not warranted. The court's initial instincts were correct, presaging the holding in *People* v. *McNiece* (1986) 181 Cal.App.3d 1048 [226 Cal.Rptr. 733] which is dispositive of the issue before us.

Section 192(c)(3) is part of an interrelated statutory scheme defining various types of vehicular manslaughter and prescribing varying punishments.[4] Subdivisions (c)(1) and (2) define vehicular manslaughter where

---

[3]Stanley was given probation on condition he serve 12 days in county jail, which had already been served as of the time of sentencing.

[4]Section 192 provides in relevant part as follows: "Manslaughter is the unlawful killing of a human being without malice. It is of three kinds:

". . . . . . . . . . . . . . . . . . .

"(c) Vehicular—

"(1) Except as provided in paragraph (3), driving a vehicle in the commission of an unlawful act, not amounting to felony, and with gross negligence; or driving a vehicle in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence.

"(2) Except as provided in paragraph (4), driving a vehicle in the commission of an unlawful act, not amounting to felony, but without gross negligence; or driving a vehicle in the commission of a lawful act which might produce death, in an unlawful manner, but without gross negligence.

"(3) Driving a vehicle in violation of Section 23152 or 23153 of the Vehicle Code and in the commission of an unlawful act, not amounting to felony, and with gross negligence;

intoxication is not involved. Each requires that the defendant drive a vehicle "in the commission of an unlawful act, not amounting to a felony, . . ." or "in the commission of a lawful act which might produce death, in an unlawful manner, . . ." It is not readily apparent to us exactly what concept the Legislature had in mind when it referred to "driving a vehicle in the commission of a[n] . . . act . . . ." We assume it meant to punish persons who drive negligently or otherwise unlawfully where such negligence or unlawful conduct causes death. (See generally *Lamadrid* v. *Municipal Court* (1981) 118 Cal.App.3d 786, 791 [173 Cal.Rptr. 599].) ■ As distinguished from subdivision (c)(2), (c)(1) requires that the defendant drive "with gross negligence." Although the statute was inexplicably drafted to treat gross negligence as an added element, in reality it merely changes the applicable standard from simple negligence to gross negligence.

Subdivisions (c)(3) and (4) closely track (1) and (2) but they truly add an *additional* element. In addition to driving negligently or with gross negligence, (c)(3) and (4) require that the defendant be driving while intoxicated in violation of either Vehicle Code section 23152 or 23153.[5] Thus, an intoxicated driver either negligently or with gross negligence will suffer a more severe penalty than a similarly acting but not intoxicated defendant.

There is no question but that the Legislature could pass a statute which prescribed more severe punishment for persons who were more intoxicated than the minimum levels giving rise to liability under Vehicle Code sections 23152 and 23153. ■ Subdivisions (c)(3) and (4) of section 192, however, very clearly were not intended to punish as manslaughter every death which results from drunk driving. Rather, the intoxicated driver must also commit some negligent or grossly negligent act while driving in order to subject himself to liability for vehicular manslaughter. As written, the statute requires evidence of intoxication as one of two predicates for liability. It cannot, however, be used again to satisfy the second predicate as evidence of the defendant's negligence or gross negligence. We thus agree with the trial court when it concluded the jury must find that in addition to being intoxicated the defendant was negligent or grossly negligent *in the manner of his operation of the vehicle*.

---

or driving a vehicle in violation of Section 23152 or 23153 of the Vehicle Code and in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence.

"(4) Driving a vehicle in violation of Section 23152 or 23153 of the Vehicle Code and in the commission of an unlawful act, not amounting to felony, but without gross negligence; or driving a vehicle in violation of Section 23152 or 23153 of the Vehicle Code and in the commission of a lawful act which might produce death, in an unlawful manner, but without gross negligence."

[5]There is apparently no requirement that the driver's intoxication be causally related to the negligence or gross negligence.

■ The circumstances of this case, however, present this issue of statutory interpretation in a strange light. The prosecutor erroneously argued to the jury that Stanley's blood-alcohol content indicated he was grossly negligent. The normal remedy for such an error would be an objection by defense counsel and a correction and admonition by the trial court. (See *People* v. *Green* (1980) 27 Cal.3d 1, 34 [164 Cal.Rptr. 1, 609 P.2d 468].) Here, as we have noted, there was no objection and hence, no admonition. Because a proper admonition could have cured any prejudice, the error cannot be raised on appeal. (*Ibid.*)

■ Sensitive to the procedural problem posed by the lack of a timely objection at trial, Stanley contends the court was under a sua sponte duty to instruct the jury that evidence of the level of intoxication could not be considered in assessing whether Stanley was grossly negligent. Virtually this identical issue was recently discussed in *People* v. *McNiece, supra,* 181 Cal.App.3d 1048. There, as here, the court instructed the jury as follows: "'The defendant is charged in Count 1 of the Information with the commission of the crime of vehicular manslaughter involving alcohol, a violation of Section 192 Paragraph III, (C) and (D) of the Penal Code. The crime of vehicular manslaughter involving alcohol is the unintentional but unlawful killing of a human being in the driving of a vehicle in violation of Vehicle Code Section 23152 or Vehicle Code Section 23153.

"'A killing is unlawful when a person commits an act inherently dangerous to human life or safety, amounting to a misdemeanor or an infraction as will be later defined, or negligently commits an act ordinarily lawful which might produce death.

"'In order to prove the commission of the crime of such vehicular manslaughter, each of the following elements must be proved: First, that a human being was killed; secondly, that the driver of the vehicle committed an unlawful act, to wit a violation of Section 22450, 21802(a), or 22350 of the Vehicle Code, or negligently committed an act ordinarily lawful which might cause death; third, that such unlawful act or negligent conduct was the proximate cause of the death of the person killed; and, fourth, that the driver of the vehicle also violated Vehicle Code Section 23152 or Vehicle Code Section 23153.

"'A proximate cause of a death is a cause which, a natural and continuance sequence produces the death and without which the death would not have occurred.

"'If you find the Defendant is guilty of manslaughter as thus defined to you, you must also find whether the act causing the death was done with

or without gross negligence, and you must declare your finding in your verdict. If you find the Defendant was guilty of manslaughter in the driving of a vehicle, but entertain a reasonable doubt as to whether the act causing the death was committed with gross negligence, it would then be your duty to find it was committed without gross negligence.

"'Now, negligence is the doing of something which a reasonably prudent person would not do or the failure to do something which a reasonably prudent person would do under similar circumstances. It is the failure to use ordinary or reasonable care.

"'Ordinary or reasonable care is that care which persons of ordinary prudence would use in order to avoid injury to themselves or others under similar circumstances.

"'The term gross negligence as used in the definition of manslaughter given in these instructions means the failure to exercise any care or the exercise of so little care that you are justified in believing that the person whose conduct is involved was wholly indifferent to the consequences of his conduct to the welfare of others.'" (*People* v. *McNiece, supra,* 181 Cal.App.3d at pp. 1055-1056.)

As in *McNiece,* because no further instructions on the distinctions between ordinary negligence and gross negligence were given, the jury was never told that the fact Stanley was under the influence of alcohol was insufficient in itself to support a finding of gross negligence. (*Id.,* at p. 1056.) "The question of whether gross negligence existed was a complicated one and difficult to resolve. The jury was entitled to know what could not be considered on this point. [Citation.]" (*Ibid.*)

As the court here indicated, the lack of such an instruction coupled with the arguments made by the prosecutor made the potential for jury confusion significant. The question of whether Stanley's conduct rose to the level of gross negligence was a close one. Accordingly, following *McNiece,* we reverse and remand for a new trial on the vehicular manslaughter count. (*Id.,* at p. 1058.)

II*

. . . . . . . . . . . . . . . . . . . .

---

*See footnote *ante,* page 248.

## DISPOSITION

The vehicular manslaughter conviction is reversed. In all other respects the judgment is affirmed.

Kremer, P. J., and Lewis, J., concurred.