[No. A036270. First Dist., Div. Five. Nov. 4, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
KURT DIETRICH VON STADEN, Defendant and Appellant.

**COUNSEL**

Charles Bush, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, David D. Salmon, Robert R. Granucci and John W. Runde, Deputy Attorneys General, for Plaintiff and Respondent.

---

## OPINION

KING, J.— In this case we hold that the "gross negligence" element required for a conviction of gross vehicular manslaughter while intoxicated cannot be shown by the mere fact of driving under the influence or violating the traffic laws. The trier of fact must determine, considering the overall circumstances of the defendant's intoxication or the manner in which he drove, or both, whether there was gross negligence because the driver failed to exercise any care or was wholly indifferent to the consequences of his conduct and to the welfare of others.

Kurt Dietrich Von Staden appeals from a judgment of conviction for vehicular manslaughter. He challenges the sufficiency of the evidence to support the judgment and claims instructional error. We affirm.

The offense occurred at around 2:30 a.m. on November 19, 1985. The victim, Tracy Allen White, was a passenger in a car driven by Von Staden. They had both attended a party in Woodacre earlier that night. Von Staden arrived after White, at around 1 a.m. He was already intoxicated, and continued drinking at the party. White consumed both alcohol and cocaine. At around 2 a.m. they left in Von Staden's automobile, despite their host's urging that Von Staden not drive.

Von Staden lost control of his automobile at a curve on Sir Francis Drake Boulevard and crashed into a telephone pole. The automobile entered the curve at 50 to 60 miles per hour, crossed into the oncoming lane, and then rotated in a clockwise direction before crashing. The speed limit in the area was 40 miles per hour; however, a sign just before the curve suggested a maximum speed of 35 miles per hour around the curve. Light to moderate patches of fog were present in the area that morning. A highway patrol officer estimated that the maximum safe speed at the curve under the prevailing conditions at the time of the accident was between 25 and 30 miles per hour.

White was dead when police arrived at the scene. Von Staden had a severe laceration across his throat, and was taken to a local hospital. A blood sample taken from Von Staden at 5:35 a.m. contained a .16 percent

blood alcohol content. When asked a hypothetical question a criminalist estimated that Von Staden's blood alcohol level would have been approximately .22 percent at 2:30 a.m.

A jury convicted Von Staden of vehicular manslaughter with gross negligence (former Pen. Code, § 192, subd. (c)(3), now § 191.5), driving under the influence with injury (Veh. Code, § 23153, subd. (a)), driving at .10 percent blood alcohol content or above with injury (Veh. Code, § 23153, subd. (b)), and driving with a revoked or suspended license (Veh. Code, § 14601.2). The court imposed the middle term of six years' imprisonment for vehicular manslaughter, with stayed prison sentences for the drunk driving offenses and a concurrent jail sentence for driving with a revoked or suspended license.

I

■ Von Staden contends there was insufficient evidence of the gross negligence element of his vehicular manslaughter conviction.

The offense of which Von Staden was convicted—vehicular manslaughter with gross negligence—was formerly set forth in Penal Code section 192, subdivision (c)(3),[1] and is presently set forth in Penal Code section 191.5 as "gross vehicular manslaughter while intoxicated."[2] Under both versions the offense includes as relevant here, driving under the influence and a violation of traffic laws, with gross negligence.

The Penal Code defines three other types of vehicular manslaughter. Two of these do not involve intoxication. (Pen. Code, § 192, subds. (c)(1) and (c)(2).) The third, which might be termed "simple vehicular manslaughter while intoxicated," includes the elements of driving under the influence and violating the traffic laws, but with simple, not gross, negligence. (Pen. Code, § 192, subd. (c)(3), formerly § 192, subd. (c)(4).) Gross vehicular manslaughter while intoxicated carries substantially greater penalties than

---

[1] Former Penal Code section 192, subdivision (c)(3), defined vehicular manslaughter with gross negligence as, "Driving a vehicle in violation of Section 23152 or 23153 of the Vehicle Code and in the commission of an unlawful act, not amounting to felony, and with gross negligence; or driving a vehicle in violation of Section 23152 or 23153 of the Vehicle Code and in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence."

[2] Penal Code section 191.5 defines gross vehicular manslaughter while intoxicated as "the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23152 or 23153 of the Vehicle Code, and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, and with gross negligence, or the proximate result of the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence."

simple vehicular manslaughter while intoxicated. (Pen. Code, § 191.5, subd. (b); Pen. Code, § 193, subd. (c)(3).)

The nature of the gross negligence element has been explored in two recent decisions, *People* v. *McNiece* (1986) 181 Cal.App.3d 1048 [226 Cal.Rptr. 733] and *People* v. *Stanley* (1986) 187 Cal.App.3d 248 [232 Cal.Rptr. 22].

*McNiece* postulated that if there is to be any distinction between gross and simple vehicular manslaughter while intoxicated, the elements of driving under the influence and violating the traffic laws cannot be "sufficient in themselves to support a finding of gross negligence," and thus gross negligence must require "something in addition." (181 Cal.App.3d at p. 1058.) The court held that because the prosecutor in closing argument relied on the mere fact of intoxication to show gross negligence, the court had a sua sponte duty to instruct the jury that the fact of driving under the influence was insufficient in itself to support a finding of gross negligence. (*Id.* at pp. 1056-1058.)

Thus *McNiece* held that the prosecutor's reliance on the mere fact of intoxication to prove gross negligence could have misled the jury, creating the need for the sua sponte instruction. Nothing in *McNiece* suggests a prosecutor cannot show gross negligence based on a *high level* (as opposed to the mere fact) of intoxication. Nevertheless, the court in *Stanley,* relying on *McNiece,* reached that very conclusion. The prosecutor in *Stanley* asserted "the excess amount of alcohol" (between .18 and .23) as evidence of gross negligence. (187 Cal.App.3d at p. 251.) The court, citing *McNiece,* concluded that evidence of intoxication cannot be used *at all* to show gross negligence, and "the jury must find that in addition to being intoxicated the defendant was . . . grossly negligent *in the manner of his operation of the vehicle.*" (*Id.* at p. 253, original italics.) Accordingly, the court in *Stanley* held the trial judge should have given a sua sponte instruction that evidence of the defendant's level of intoxication could not be considered in determining the presence of gross negligence. (*Id.* at pp. 254-255.)

We agree with *McNiece* that gross negligence cannot be shown by the *mere fact* of driving under the influence and violating the traffic laws. Otherwise, gross and simple vehicular manslaughter while intoxicated would be identical crimes with different punishments which would create obvious due process problems.

We also agree with *Stanley* that gross negligence can be shown by the *manner* in which the defendant operated the vehicle, that is, the overall circumstances (rather than the mere fact) of the traffic law violation. For

many years California's appellate courts have relied on such evidence as substantial evidence of gross negligence. (E.g., *People* v. *Costa* (1953) 40 Cal.2d 160, 169 [252 P.2d 1]; *People* v. *Markham* (1957) 153 Cal.App.2d 260, 275 [314 P.2d 217].)

We *disagree* with the holding in *Stanley* that gross negligence cannot be shown by the level of the defendant's intoxication. First, nothing in the history of sections 191.5 and 192 suggests the Legislature intended such a restriction. Second, if gross negligence could not be shown by the circumstances of intoxication, then by the same logic it could not be shown by the circumstances of the traffic law violation (despite years of contrary case law), and hence would be impossible to prove. Third, one who drives with a very high level of intoxication is indeed more negligent, more dangerous, and thus more culpable than one who drives near the legal limit of intoxication, just as one who exceeds the speed limit by 50 miles per hour exhibits greater negligence than one who exceeds the speed limit by 5 miles per hour.

Accordingly, we hold that gross negligence cannot be shown by the mere fact of driving under the influence or violating the traffic laws, but can be shown by the overall circumstances of the defendant's intoxication and the manner in which the defendant drove. ■■■ On both these points there was ample evidence that Von Staden was grossly negligent. He ignored his host's urging that he not drive while intoxicated, and his level of intoxication was very high. In view of the prevailing highway conditions at the time of the accident (darkness, fog, a curve in the road) the maximum safe speed was between 25 and 30 miles per hour, and Von Staden exceeded this by some 30 miles per hour. The judgment was supported by substantial evidence.

## II

■■■ Von Staden also asserts instructional error. The court followed *McNiece* by defining gross negligence and then cautioning the jury that driving under the influence of alcohol was insufficient by itself to establish gross negligence. (See CALJIC No. 8.92 [1987 revision].) However, because the prosecutor in closing argument referred to Von Staden's violation of the traffic laws to show gross negligence, Von Staden contends the court should also have given a *McNiece*-style sua sponte instruction that violating the traffic laws is insufficient by itself to establish gross negligence.

The prosecutor's closing argument did not mislead the jury into believing gross negligence could be shown solely by the fact of a traffic violation.

Indeed, the prosecutor specifically informed the jury that the mere fact of the traffic violation was *not* enough.

The prosecutor argued, "I submit to you that the speed with which the vehicle was being driven is clear evidence under the circumstances for this roadway. *Now, the speed in and of itself isn't a factor but, you've got to put the speed and put that together with the condition of the roadway with this blind curve and going that fast around that corner in that condition.* The defendant was wholly indifferent to the consequences. Wholly indifferent to the safety of the person, his passenger, Tracy White." (Italics added.) Thus, the prosecutor properly relied on the overall circumstances and specifically informed the jury it could not rely on the mere fact of speeding to find gross negligence. Unlike in *McNiece,* there was no misleading argument to create the need for a curative sua sponte instruction.

Von Staden's argument of instructional error is flawed for another reason. He contends that the jury must be instructed that driving under the influence alone or violation of a traffic law alone is insufficient to establish gross negligence. Such an instruction would mislead the jury to the prejudice of the defendant where, as here, evidence of each is present. Having been instructed that neither, standing alone, is sufficient to establish gross negligence, the jury is likely to conclude that evidence of both requires a finding of gross negligence. This is not the law.

The court's instruction on gross negligence was derived from CALJIC No. 8.92, which was revised in 1987 based on *McNiece.* This instruction was incomplete in that it did not explain to the jury that gross negligence can be established from the totality of circumstances surrounding the defendant's intoxication and his driving.

We believe that CALJIC No. 8.92 should be revised as follows: "The mere fact that a defendant drives a motor vehicle while under the influence of alcohol and violates a traffic law is insufficient in itself to constitute gross negligence. You must determine from the overall circumstances of the defendant's intoxication or the manner in which he drove, or both, whether his conduct constituted gross negligence. The term 'gross negligence' as used in the definition of manslaughter given in these instructions means the failure to exercise any care, or the exercise of so little care that you are justified in believing the defendant was wholly indifferent to the consequences of his conduct and to the welfare of others."

Given the nature of the prosecutor's closing argument and the lack of a need for a curative sua sponte instruction, the deficiencies in the present

instruction did not rise to the level of error. Even if error, given the evidence, it was not prejudicial to Von Staden.

The judgment is affirmed.

Low, P. J., and Haning, J., concurred.