[No. F007777. Fifth Dist. Aug. 3, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
DANNY KENT LEFFEL, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III through V.

## COUNSEL

John P. Hannon II, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Roger E. Venturi and Alison Aleman, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BEST, Acting P. J.—

### STATEMENT OF THE CASE

Defendant was convicted by jury in case No. 825 of vehicular manslaughter in violation of Penal Code section 192, subdivision (c)(3). Probation was denied and defendant was sentenced to state prison for the upper term of 8 years, with presentence credit of 55 days. A term of 16 months imposed for a conviction of assault with intent to commit sodomy (Pen. Code, § 220) in a separate case, No. 826, was ordered to be served consecutively to the 8-year term. Defendant received 37 days' credit in case No. 826. It was further ordered that defendant pay a restitution fine of $500 and that defendant reimburse the parents of the victim for $8,853.79.

### STATEMENT OF FACTS

At approximately 9 p.m. on January 10, 1985, defendant met Richard Shouse at a party in Fresno. Shouse's girlfriend, Richell Graham, was also there. At the party, defendant drank a half pint of an alcoholic beverage. Shouse drank a lot of beer from a keg and became intoxicated.

Defendant and Shouse left the party around 2 a.m. (Jan. 11, 1985), went to a friend's house and had more wine. They did not stay there long and later left to go to Shouse's brother's apartment with Richell. While there, they drank more wine and rested, but did not sleep.

Defendant, Shouse and Richell left the apartment in Fresno at about 8 a.m. to go to defendant's parents' house. Defendant drove his Volkswagen pickup truck. Shouse sat on the passenger's side and Richell sat in the middle between the two.

Judith Crawford and her son were traveling to Mariposa on Highway 49 on January 11, 1985, at around 9:30 a.m. At the William Sell bridge, Ms. Crawford observed defendant's pickup truck drive up suddenly from behind and pass around her at a speed of 75-85 miles per hour. She clearly observed defendant driving the pickup and noted that the truck was traveling so fast that its back end was vibrating.

Clayton McDonald was also traveling on Highway 49. As he drove past the vicinity of Dr. Parker's residence, he observed defendant's Volkswagen pickup come around a curve, cross the centerline into his lane of traffic, and drive toward him at a speed of approximately 70 miles per hour. He clearly

saw defendant driving the pickup. McDonald pulled over out of the way and watched as the pickup truck went up into the bank and rolled completely over, finally landing on its wheels. He also observed a young woman being thrown from the rolling pickup and landing in the center of the roadway.

After the accident, McDonald ran to check the female passenger and then went to the pickup. He saw defendant sitting behind the steering wheel and Shouse sitting in the passenger seat. Defendant and Shouse got out of the pickup truck through a window, and McDonald heard defendant say, "I lost the dog." Richell Graham was covered with blankets and defendant and Shouse stayed by her until an ambulance arrived.

Sergeant John D. Conway of the California Highway Patrol responded to the scene of the accident. When he asked both defendant and Shouse who was driving, defendant handed over his driver's license. Conway noticed the odor of alcohol and requested Officer Dean Fogh, who had also arrived, to conduct field sobriety tests on defendant. Conway then examined the pickup truck and found a vodka bottle and an apple-flavored brandy bottle inside the vehicle.

When Officer Fogh inquired who was driving, defendant told him he was the driver. Defendant had the odor of an alcoholic beverage about him, slurred his speech and failed to respond to normal questions. Fogh then conducted field sobriety tests to determine any impairment to defendant's motor functions. Defendant failed to perform these tests satisfactorily and was subsequently arrested for felony drunk driving. He was then taken to the hospital for medical treatment for minor injuries he had sustained, but refused treatment. A breath test was later administered at the jail, which disclosed defendant's blood-alcohol level to be .16 percent.

It was determined by calculations made at the accident scene from the skid marks that defendant's vehicle was traveling a minimum of 81 miles per hour in the wrong lane of traffic as it went into the skid prior to overturning.

Richell Graham died as a result of injuries sustained in the accident.

## DISCUSSION

## I

*Did the Trial Court Inadequately Instruct the Jury Regarding the Requirement of Gross Negligence?*

Defendant contends: (1) the trial court erred in not instructing the jury that the fact he was under the influence of alcohol was insufficient in itself to support a finding of gross negligence; and (2) in the absence of such instruction, the district attorney's statements to the jury during argument could have greatly misled the jury. In so contending, defendant relies on this court's opinion in *People* v. *McNiece* (1986) 181 Cal.App.3d 1048 [226 Cal.Rptr. 733].

We recently clarified the holding in the *McNiece* case in *People* v. *Pike* (1988) 197 Cal.App.3d 732 [243 Cal.Rptr. 54]. In essence, our holding in *Pike* was that the CALJIC instruction on gross negligence was not in itself inadequate to properly guide the jury on the law. Instead, we noted that the circumstances of the *McNiece* case, particularly the prosecutor's misleading closing argument, could have misled the jury in the absence of further instructions steering the jury clear from the prosecutor's faulty and misleading argument. We stated as follows: "Defendant misconstrues our holding in *McNiece,* which was that *under the circumstances of that case* the failure of the trial court to clarify its instructions defining gross negligence constituted reversible error. The circumstances requiring clarification of the instructions on gross negligence were (1) defendant was prosecuted for felony vehicular manslaughter under Penal Code section 192, subdivision (c)(3), of which the driving of a vehicle while under the influence of alcohol is an essential element; (2) the unlawful act relied upon was running a stop sign; and (3) the prosecutor's closing argument could have misled the jury to believe that the defendant's driving under the influence of alcohol could, in and of itself, constitute gross negligence.

"With these circumstances in mind, we held in *McNiece*: 'Under the circumstances, the definition of *gross* negligence was improperly presented to the jury. It was not made clear what the jury was required to find.

" 'Again, while the instructions indicated there was a difference between the two levels of negligence, nowhere in the instructions was the jury actually told that drunk driving alone did not constitute gross negligence. It was indicated the two kinds of negligence differed, and gross negligence was defined generally; however, no instruction clarified that something in addition to appellant's being under the influence of alcohol was necessary to

establish gross negligence. There was no request for this additional instruction. It was necessary in all fairness that the jury be instructed that the element of gross negligence could not be supported solely by facts which satisfied other essential elements of section 192, subdivision (c)(3), namely (1) drunk driving and (2) a traffic offense.' (*People* v. *McNiece, supra,* 181 Cal.App.3d at p. 1057.)" (*People* v. *Pike, supra,* 197 Cal.App.3d at p. 740.)

Thus, we have previously rejected the first part of defendant's contention herein.

The second part of defendant's contention is that, like in *McNiece* and in *People* v. *Stanley* (1986) 187 Cal.App.3d 248 [232 Cal.Rptr. 22], the prosecutor's argument in this case could have misled the jury absent clarifying instructions from the court.

The core of this court's discussion of the instruction issue in *McNiece* revolved around certain remarks made by the prosecutor during argument which appeared to equate mere use of alcohol with gross negligence:

" 'Do you feel based on the evidence in this case and what took place at the intersection that the alcohol did not cause the accident? Are we talking about a stone cold sober person driving a vehicle down Country Center? No. Did it cause the accident? That is what gross negligence deals with, facts. Did it cause the accident? Absolutely, alcohol caused this accident.'

". . . 'No reasonable person can look at the accident, the circumstances of this case, and tell me or anyone that alcohol was not responsible for the death of Karen Wonacott. That is what this case is all about. That is what we have legislature [*sic*] for. That is why we have drunk driving laws. Alcohol causes accidents. . . .' " (*People* v. *McNiece, supra,* 181 Cal.App.3d at pp. 1056-1057.)

We described the foregoing remarks as ". . . a statement made by the prosecuting attorney during closing argument [which] could have greatly misled the jury . . . ." (*Id.* at p. 1056.)

The same kinds of remarks were made by the prosecutor in *People* v. *Stanley, supra.* The appellate court in that case stated, " . . . the deputy district attorney repeatedly suggested to the jury that it should consider the amount of alcohol in Stanley's system as evidence of his gross negligence." (*People* v. *Stanley, supra,* 187 Cal.App.3d at p. 251.) The *Stanley* court offered as examples the following statements: " 'But it rises to the level of gross negligence in this particular case *because of the amount of alcohol that this defendant has in his system.*' . . . 'I want you to look at all the factors

that make him grossly negligent, [i.e.,] *the excess amount of alcohol, . . .'* " *(Ibid.,* italics in original.) The appellate court noted that "The prosecutor erroneously argued to the jury that Stanley's blood-alcohol content indicated he was grossly negligent." *(Id.* at p. 254.) At the end of its discussion on the issue, the court noted, ". . . the lack of such an instruction coupled with the arguments made by the prosecutor made the potential for jury confusion significant." *(Id.* at p. 255.)

In the instant case, the pertinent arguments to the jury were as follows: "[PROSECUTOR:] By his own admission, plus the scientific evidence of the .16, he was under the influence. *The pattern of driving, this high speed, wrong side of the road, reckless disregard, really for anyone and everyone's life, excessive speed, across the center line, all of these things to go [sic] one issue. Was he driving with simple negligence? Or was he driving with gross negligence?*

"Now, the judge will instruct you that the term 'gross negligence' means the failure to exercise any care or the exercise of so little care that you are justified in believing that the person whose conduct is involved was wholly indifferent to the consequences of his conduct and to the welfare of others. To me, it's so evident that this evidence shows that he didn't care. Leffel didn't care—for whatever reason. He testified he hadn't slept in two nights, he then goes to a party, *he drinks all night,* then he proceeds to take two other passengers and decide to come to Mariposa, they stay up all night long—this is three nights without sleep—*obviously under the influence,* and then he gets in a car and subjects other people to this total indifference to their safety. He told us that at the scene of the accident, he was in an alcoholic daze, he was in shock, he had a concussion. Yet when they take him to the hospital, he refuses any medical treatment." (Italics added.)

"[DEFENSE COUNSEL:] Now, if you do not believe Mr. Leffel's testimony, the D.A. says he also has to prove—there's other things you have to consider. Number one, whether there is gross negligence, and the Court and the D.A. has [sic] read you the instructions of what the law is on that, or whether there was not gross negligence. You will be given instructions on the difference between the two charges.

"Now what does the D.A. say that is gross negligence? He says if you find that Danny was driving, that he was under the influence. *But that alone itself is not gross negligence.* If it was, look at the people that are arrested, you know, daily for drunk driving arrests. On the other side he says, the other things he says, reasons for the gross negligence is being on the other side of the road, and being over 55 miles an hour. I believe the Court will instruct you that being on the wrong side of the road must be willfully on

the wrong side of the road. And the only thing the District Attorney has showed is that there are skid marks on the other side of the road. It's my contention that no one, he wasn't willfully over here, but that for some reason—maybe because of the curve—they were driving over there, maybe because of the dampness of the road. But the skid marks were over here and they were trying to get back or there wouldn't have been skid marks; they're not intentionally, willfully trying to be over on that left side of the road.

*"I contend to you that when you hear the definition of gross negligence, that merely being on the other side of the road is not gross negligence. I also contend to you that going over 55 miles an hour is not gross negligence. How many of us do it everyday? It might be negligence, but it's not gross negligence.*

".    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"[PROSECUTOR:] . . . Mr. Gimblin says that we drive in excess of 55. But we certainly don't come into a blind corner at 80 miles an hour, minimum speed, 81 miles an hour, and sit there and say, 'Oh, he's just breaking the speed law a little bit.'

"Yes, willfully. We've got a situation where he's coming in so fast, he can't keep it on his own side of the road. That's where the skid marks come from. Those are centrifugal skids that's pushing the car away from the curve—reckless driving.

".    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

". . . And I think all of the actions that took place in this case clearly show that this is with gross negligence and I would request that you return a verdict of such." (Italics added.)

As can be seen, in contrast to both *McNiece* and *Stanley,* the prosecutor in this case did not explicitly equate intoxication with gross negligence. While there are two references in the prosecutor's argument to alcohol in connection with gross negligence ("he drinks all night," and "obviously under the influence"), given the circumstances as a whole, such references are insufficient to make the potential for jury confusion significant.

Instead, it appears that the possibility the jury may have been misled by the prosecutor's argument is not a reasonable one. It is clear that the prosecutor focused on the pattern of driving, i.e., the high speed and driving on the wrong side of the road, for proof that defendant drove with gross negligence. When the prosecutor did mention the drinking and being under

the influence it is clear that his main focus was with regard to defendant's lack of sleep in three nights, thereby exhibiting a reckless or careless attitude or mind set, as opposed to inadvertence being the cause of the accident. Moreover, defense counsel's argument set the jury and the prosecutor straight by explaining that driving under the influence alone is not gross negligence. In rebuttal, the prosecutor focused only on the driving to support gross negligence. Finally, the jury was not only read the instructions regarding the difference between negligence and gross negligence, but it also took these instructions into the jury room after a request for reinstruction on the issue. As noted earlier, the instructions are adequate and not misleading. They focus on the "unlawful act" and not the defendant's intoxication as the basis for determining whether the manslaughter was committed with ordinary or gross negligence.[1] In short, unlike the *McNiece* case, the

---

[1] The jury was instructed as follows: "Defendant is charged in the information with the commission of the crime of vehicular manslaughter involving alcohol, a violation of Penal Code Section 192 paragraph C, sub-paragraph 3. The crime of vehicular manslaughter involving alcohol is the unintentional, but unlawful killing of a human being in the driving of a vehicle, in violation of Vehicle Code Section 23152 or Vehicle Code Section 23153. A killing is unlawful when a person commits an act inherently dangerous to human life or safety, amounting to a misdemeanor or an infraction, as will be later defined.

"In order to prove the commission of the crime of such vehicular manslaughter, each of the following elements must be proved: One, that a human being was killed; two, that the driver of the vehicle committed an unlawful act or acts, to wit, violation of California Vehicle Code Section 22348a, exceeding the maximum speed limit, and/or, violation of California Vehicle Code Section 23350, [*sic*] driving on a highway at a speed greater than the posted limit, unsafe for prevailing conditions, or which endangers safety of persons or property, and/or violation of California Vehicle Code Section 23103, reckless driving, and/or, violation of California Vehicle Code Section 21650, failure to drive on the right half of the roadway; three, that such *unlawful act* or negligent conduct was a proximate cause of the death of the person killed; and four, that the driver of the vehicle himself violated Vehicle Code Section 23153.

"A proximate cause of death is a cause which, in natural and continuous sequence, produces the death, and without which the death would not have occurred. If you find that the defendant is guilty of manslaughter, you must also find whether *the act* causing the death was done with or without gross negligence, and you must declare your finding in that respect in your verdict.

"There will be two forms of verdict to enable you to do that, by signing the one that reflects your finding of whether the crime was committed and if so, whether it was with or without gross negligence.

"If you find that the defendant was guilty of manslaughter in the driving of a vehicle, but entertain a reasonable doubt as to whether *the act* causing death was committed with gross negligence, it would be, would then be your duty to find that it was committed without gross negligence.

"Now, negligence is the doing of something which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do under similar circumstances. It is the failure to use ordinary or reasonable care. And ordinary or reasonable care is that care which persons of ordinary prudence would use in order to avoid injury to themselves or others, under similar circumstances.

"The term 'gross negligence' as used in the definition of manslaughter given in these instructions means the failure to exercise any care, or the exercise of so little care that you are

jury was adequately informed that it was required to find more than just the elements of driving under the influence and violating the traffic law before it could make a finding of gross negligence.

Assuming that the trial court's instructions together with the prosecutor's remarks rise to the level of presenting the case to the jury on alternate theories, some of which are legally correct and others legally incorrect, reversal is not required. In the past, the governing rule on appeal in these circumstances was that if the reviewing court could not determine from the record on which theory the ensuing general verdict of guilt rested, the conviction could not stand. (*People* v. *Green* (1980) 27 Cal.3d 1, 69 [164 Cal.Rptr. 1, 609 P.2d 468], disapproved on other grounds in *People* v. *Hall* (1986) 41 Cal.3d 826, 834, fn. 3 [226 Cal.Rptr. 112, 718 P.2d 99].) Recently, however, our Supreme Court in *People* v. *Lee* (1987) 43 Cal.3d 666 [238 Cal.Rptr. 406, 738 P.2d 752] embraced the rule enunciated in *Rose* v. *Clark* (1986) 478 U.S. 570 [92 L.Ed.2d 460, 106 S.Ct. 3101], which reserved a reversal per se standard for "*fundamental* trial errors, such as the introduction of a coerced confession or the complete denial of counsel, which either 'aborted the basic trial process [citation], or denied it altogether [citation].' [Citation.]" (*People* v. *Lee, supra,* 43 Cal.3d at pp. 674-675.) On the subject under discussion, the court had this to say: "Similarly, defendant relies on cases holding that a conviction should be reversed if the jury instructions regarding one of several prosecution theories were legally or factually incorrect, and it is impossible to determine which theory the jury relied on in rendering its verdict. (E.g., *People* v. *Green* (1980) 27 Cal.3d 1, 69-70 [164 Cal.Rptr. 1, 609 P.2d 468].) But, assuming that it is clear beyond a reasonable doubt that a properly instructed jury would have found a specific intent to kill, any error in instructing the jury on the alternative 'theory' of implied malice cannot be deemed a 'miscarriage of justice' under our state constitutional harmless error provision (art. VI, § 13), and a reversal per se rule would be inappropriate. (See *People* v. *Cantrell* (1973) 8 Cal.3d 672, 686 [105 Cal.Rptr. 792, 504 P.2d 1256] [alternate theory rule subject to harmless error analysis].)" (*Id.* at p. 675, fn. 1.)

In the instant case, any error which may have occurred was harmless in view of the entire record. The evidence was overwhelming that defendant was grossly negligent in driving his vehicle—that he drove with so little care that it could be justifiably believed he was wholly indifferent to the consequences of his conduct and to the welfare of others. The evidence also established he drove his Volkswagen pickup at speeds of up to 75 and 85

---

justified in believing the person, that the person whose conduct is involved was wholly indifferent to the consequences of his conduct and to the welfare of others." (Italics added.)

A copy of the last four paragraphs was given to the jury during its deliberations. (See CALJIC Nos. 8.91 and 8.92.)

miles per hour and crossed over into the oncoming lane of traffic before finally running up onto a bank and rolling the pickup truck over.

Further, there was absolutely no evidence to refute the gross negligence with which the vehicle was driven. Indeed, the defense posture of the case centered on the theory that Richard Shouse, not defendant, was driving at the time of the accident. Thus, we conclude that "there is no reasonable possibility that absent the error the verdict would have been different." (*People* v. *Lee, supra,* 43 Cal.3d at p. 677.)

## II

*Does the Trial Court's Failure to Instruct the Jury Pursuant to CALJIC No. 4.71.5 or 17.01 Require a Reversal?*

As noted earlier, the jury was given the following instruction regarding a violation of Penal Code section 192, subdivision (c)(3): "In order to prove the commission of the crime of such vehicular manslaughter, each of the following elements must be proved: One, that a human being was killed; two, that the driver of the vehicle committed an unlawful act or acts, to wit, violation of California Vehicle Code Section 22348a, exceeding the maximum speed limit, and/or, violation of California Vehicle Code Section 23350, driving on a highway at a speed greater than the posted limit, unsafe for the prevailing conditions, or which endangers safety of persons or property, and/or violation of California Vehicle Code Section 23103, reckless driving, and/or, violation of California Vehicle Code Section 21650, failure to drive on the right half of the roadway; three, that such unlawful act or negligent conduct was a proximate cause of the death of the person killed; and four, that the driver of the vehicle himself violated Vehicle Code section 23153."

Defendant contends that this instruction gave the jury a number of separate acts from which it could choose in determining whether he committed the "unlawful act" element and the failure of the trial court to give a unanimity instruction sua sponte constituted reversible error. We disagree.

As a general rule, when the accusatory pleading charges a single criminal offense and evidence at trial indicates more than one act which might constitute the charged offense, the court must instruct the jurors, sua sponte, in the words of CALJIC No. 17.01 or 4.71.5, or their equivalent, that the jury must unanimously agree on the specific act which forms the basis of the conviction. (*People* v. *Diedrich* (1982) 31 Cal.3d 263, 280 [182 Cal.Rptr. 354, 643 P.2d 971]; *People* v. *Deletto* (1983) 147 Cal.App.3d 458, 464-466 [195 Cal.Rptr. 233].) Defendant has cited no authority, however, for the proposition that where a crime has more than one element, the jury must unanimously agree on one specific act as constituting a required element of the offense. The available authority is to the contrary. In

*People* v. *Kent* (1981) 125 Cal.App.3d 207 [178 Cal.Rptr. 28], Kent contended he was entitled to a sua sponte unanimity instruction because, since the evidence suggested that four different items of property had been taken during the robbery, all jurors had to agree on at least one item in order to properly convict. The appellate court rejected Kent's argument, stating: "We can find no authority, however, in support of Kent's proposition that where a crime has more than one element, the jury must unanimously agree on the act necessary to constitute that element. All of the cases cited by Kent involve situations where the multiple acts which were proved in themselves constituted *separate chargeable offenses,* not just alternate ways of proving a necessary element of the *same offense.*" (*Id*. at p. 213, original italics, fn. omitted.)

In the case at hand, defendant was charged with one count of vehicular manslaughter in violation of Penal Code section 192, subdivision (c)(3), of which one element is "the commission of an unlawful act, not amounting to a felony." The possible alternative Vehicle Code violations set forth in the trial court's instruction above quoted are just alternate ways of proving a necessary element of the same offense.

Furthermore, the evidence at trial clearly established that defendant's acts of driving on the wrong side of the road (Veh. Code, § 21650) and at such excessive speeds (Veh. Code, §§ 22348, subd. (a), 22350) virtually occurred simultaneously with each other and were "so closely connected in time that they in effect formed part of one transaction." (*People* v. *Turner* (1983) 145 Cal.App.3d 658, 681 [193 Cal.Rptr. 614].) The acts described were so closely connected in time and place that the jurors would have no rational reason to pick out one act to believe, while disbelieving the other. Thus, it was not necessary for the trial court to give an instruction that the jury must agree on one specific act. The trial court did not err in failing to give a unanimity instruction.

Finally, even assuming, arguendo, that the trial court erred by not instructing the jury that they must agree to a specific act in order to convict, the error is harmless. Defendant's defense to the charge of vehicular manslaughter was that he simply was not driving at the time of the accident— his friend Richard Shouse was driving. The jury obviously did not believe the only defense offered by defendant. Thus, there is no reason to believe that the verdict was not unanimous. Here, as in *People* v. *Deletto, supra,* 147 Cal.App.3d at page 473, "there is no rational basis to suspect the jury might have reached a different result had it been instructed with CALJIC No. 17.01."

Thus, even assuming instructional error in the instant case, this error does not require reversal because it was harmless beyond a reasonable

doubt. (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

### III-V*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### DISPOSITION

The judgment of conviction is affirmed.

The judgment of sentence is reversed and the cause is remanded for resentencing in case No. 826 and for the purpore of recalculating the sentencing credits to which defendant is entitled. The trial court is directed to prepare a new abstract of judgment and furnish the same to the appropriate authorities.

Ardaiz, J., and Brown (G. A.), J.,† concurred.

Appellant's petition for review by the Supreme Court was denied November 23, 1988.

---

* See footnote *ante*, page 575.
† Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.