[No. S018584. Dec. 5, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN BENNETT, JR., Defendant and Appellant.

Counsel

Fern M. Laethem, State Public Defender, under appointment by the Supreme Court, and Jeanne Wolfe, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart and George Williamson, Chief Assistant Attorneys General, John H. Sugiyama, Assistant Attorney General, Herbert F. Wilkinson, Morris Beatus and David D. Salmon, Deputy Attorneys General, for Plaintiff and Respondent.

---

Opinion

MOSK, J.—Defendant appeals from a conviction of gross vehicular manslaughter while intoxicated. (Pen. Code, § 191.5, subd. (a).)[1] The Court of Appeal affirmed the conviction. Defendant contends the trial court erroneously instructed the jury that it could find gross negligence from "the overall circumstances of [his] intoxication." (CALJIC No. 8.94 (5th ed. 1988 bound vol.).) For the reasons stated below we conclude that the instruction is correct, and we therefore affirm the judgment of the Court of Appeal.

I.

Late in the afternoon of December 11, 1988, defendant, a 30-year-old male, and 2 friends who were each less than 21 years of age (see Bus. & Prof. Code, § 25658), began drinking from a "party ball" of beer—a keg approximately 18 inches in diameter and a foot long. After an hour or so, defendant drove the two teenagers to the beach in his pickup truck. There they met another friend and continued drinking from the "party ball." The four "pretty well killed the entire thing" before they left after sunset. The victim and one friend rode with defendant while the third friend followed in his own car.

Described by one witness as "pretty drunk," defendant was weaving in and out of his traffic lane as he drove inland from the beach. The third friend tried to signal defendant that his truck was drifting off the road by honking his horn and flashing his lights. As defendant approached a blind curve on a downgrade, he crossed the double yellow line and passed three cars. He was

---

[1]All further references are to the Penal Code unless otherwise indicated.

driving approximately 10 miles over the speed limit when he lost control of his vehicle at the bottom of the hill.

Defendant's truck went off the road, came back and rolled over five or six times. All three occupants were ejected. Defendant and one passenger survived with minor injuries; the other passenger died. Defendant's blood-alcohol level two hours later was 0.20 percent.

Defendant was convicted of gross vehicular manslaughter while intoxicated. (§ 191.5, subd. (a).) Section 191.5 as charged defines the offense as the unlawful killing of a human being without malice, while driving under the influence, in the commission of an unlawful act not amounting to a felony, and with gross negligence.

The only contested issue at trial was whether defendant was grossly negligent. In accordance with CALJIC No. 8.94, the jury was instructed to determine gross negligence from "the overall circumstances of the defendant's intoxication *or* the manner in which he drove, or both . . . ." (Italics added.)

■■■■ On appeal, defendant challenged this instruction. He argued that it erroneously allowed the jury to find gross negligence from the circumstances of his intoxication alone, without regard to his manner of driving. In affirming the judgment, the Court of Appeal held the instruction was correct.

## II.

To determine the propriety of the challenged instruction, we must examine the Penal Code's definition of gross vehicular manslaughter while intoxicated. The history of the legislation is instructive.

Manslaughter is the unlawful killing of a human being without malice. Originally, two kinds of manslaughter were defined: voluntary and involuntary. (Former § 192, subds. 1 & 2.) In 1945, the Legislature created the offense of vehicular manslaughter, the unlawful killing of a human being while driving a vehicle. (Former § 192, subd. 3, added by Stats. 1945, ch. 1006, § 1, p. 1942.) In 1983, it further defined vehicular manslaughter as being with or without gross negligence and with or without some form of intoxication. (Former § 192, subd. 3, as amended by Stats. 1983, ch. 937, § 1, pp. 3387-3388.)

Three years later, the Legislature enacted the statute here in issue, defining the crime of vehicular manslaughter with gross negligence while driving

under the influence. (§ 191.5, added by Stats. 1986, ch. 1106, § 2, p. 3881.) Section 191.5, subdivision (a), provides: "Gross vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23152 [driving under the influence] or 23153 [driving under the influence with bodily injury] of the Vehicle Code, and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, and with gross negligence, or the proximate result of the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence."[2]

The requirement of section 191.5 that the defendant act with gross negligence is the focus of this appeal. The gross negligence element was addressed in *People* v. *McNiece* (1986) 181 Cal.App.3d 1048 [226 Cal.Rptr. 733] (hereafter *McNiece*), in which the court reversed a conviction for gross vehicular manslaughter with intoxication because the trial court failed to instruct the jury that "gross negligence could not be supported solely by facts which satisfied other essential elements . . . , namely (1) drunk driving and (2) a traffic offense." (*Id.* at p. 1057.) The court held that "something in addition" was necessary, but did not define what this "something" was. (*Id.* at p. 1058.)

■ Gross negligence is the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences. (*People* v. *Watson* (1981) 30 Cal.3d 290, 296 [179 Cal.Rptr. 43, 637 P.2d 279].) "The state of mind of a person who acts with conscious indifferences to the consequences is simply, 'I don't care what happens.'" (*People* v. *Olivas* (1985) 172 Cal.App.3d 984, 988 [218 Cal.Rptr. 567]) The test is objective: whether a reasonable person in the defendant's position would have been aware of the risk involved. (*People* v. *Watson, supra,* 30 Cal.3d at p. 296.)

■ Defendant challenges the gross negligence instruction given in this case: "The mere fact that a defendant drives a motor vehicle while under the influence of alcohol and violates a traffic law is insufficient in itself to constitute gross negligence. You must determine from the overall circumstances of the defendant's intoxication *or* the manner in which he drove, or both, whether his conduct constituted gross negligence." (CALJIC No. 8.94, italics added.)[3]

---

[2]The provision replaced former section 192, subdivision (c)(3).

[3]The jury was also instructed on gross negligence as follows: "['Gross negligence'] means conduct which is more than ordinary negligence. Ordinary negligence is the failure to exercise ordinary or reasonable care.

"['Gross negligence'] refers to [a] negligent act which [is] aggravated, reckless and gross and which [is] such a departure from what would be the conduct of an ordinarily prudent,

The issue is whether allowing the jury to find gross negligence from the "overall circumstances of the defendant's intoxication," without more, is consistent with the Legislature's definition of gross vehicular manslaughter while intoxicated. The cases reach different conclusions.

Defendant relies on *People* v. *Stanley* (1986) 187 Cal.App.3d 248 [232 Cal.Rptr. 22] (hereafter *Stanley*), which narrowly defined gross negligence. There the court held that the degree of intoxication could not alone be used to establish gross negligence: "As written, the statute requires evidence of intoxication as one of two predicates for liability. It cannot, however, be used again to satisfy the second predicate as evidence of the defendant's negligence or gross negligence. . . . [T]he jury must find that in addition to being intoxicated the defendant was negligent or grossly negligent *in the manner of his operation of the vehicle*." (*Id.* at p. 253, italics in original.)[4]

A different approach was taken in *People* v. *Von Staden* (1987) 195 Cal.App.3d 1423 [241 Cal.Rptr. 523] (*Von Staden*), from which the challenged instruction is derived. The *Von Staden* court agreed with *McNiece* that "gross negligence cannot be shown by the *mere fact* of driving under the influence and violating the traffic laws." (*Id.* at p. 1427, italics in original.) It also agreed with *Stanley* that "gross negligence can be shown by the *manner* in which the defendant operated the vehicle, that is, the overall circumstances (rather than the mere fact) of the traffic law violation." (*Ibid.*, italics in original.)

The court, however, disagreed with the holding of *Stanley* that gross negligence cannot be shown by the level of defendant's intoxication: "nothing in the history of sections 191.5 and 192 suggests the Legislature intended such a restriction. . . . [O]ne who drives with a very high level of intoxication is indeed more negligent, more dangerous, and thus more culpable than one who drives near the legal limit of intoxication, just as one who exceeds the speed limit by 50 miles per hour exhibits greater negligence than one who exceeds the speed limit by 5 miles per hour." (*Von Staden, supra,* 195 Cal.App.3d at p. 1428.) The court concluded that "The trier of fact must determine, considering the overall circumstances of the defendant's intoxication or the manner in which he drove, or both, whether there was gross negligence . . . ." (*Id.* at p. 1425.)

---

careful person under the same circumstances as to be contrary to a proper regard for [human life] or to constitute indifference to the consequences of such act[s]. The facts must be such that the consequences of the negligent act[s] could reasonably have been foreseen and it must appear that the [death] was not the result of inattention, mistaken judgment or misadventure but the natural and probable result of an aggravated, reckless or grossly negligent act." (Brackets in original, CALJIC No. 3.36.)

[4]Both *McNiece* and *Stanley* interpreted former section 192, subdivision (c)(3).

Defendant contends that *Von Staden, supra,* 195 Cal.App.3d 1423, and the decision of the Court of Appeal in the present case are incorrect: the jury should not be allowed to base its finding of gross negligence on evidence of the defendant's overall circumstances of intoxication. He argues that under the plain language of section 191.5, the People must show that the unlawful act, here the traffic violation, was performed with gross negligence. Thus, he argues, only his "driving conduct at the time of the traffic accident," not his level of intoxication, is relevant to determining gross negligence.

Defendant fails to grasp, however, that a driver's level of intoxication is an integral aspect of the "driving conduct." A high level of intoxication sets the stage for tragedy long before the driver turns the ignition key. "There is a very commonly understood risk which attends every motor vehicle driver who is intoxicated. [Citation.] One who wilfully consumes alcoholic beverages to the point of intoxication, knowing that he thereafter must operate a motor vehicle, thereby combining sharply impaired physical and mental faculties with a vehicle capable of great force and speed, reasonably may be held to exhibit a conscious disregard of the safety of others. The effect may be lethal . . . ." (*Taylor v. Superior Court* (1979) 24 Cal.3d 890, 896-897 [157 Cal.Rptr. 693, 598 P.2d 854].)

The jury should therefore consider all relevant circumstances, including level of intoxication, to determine if the defendant acted with a conscious disregard of the consequences rather than with mere inadvertence. (See, e.g., *People v. Costa* (1953) 40 Cal.2d 160, 166 [252 P.2d 1] [evidence that defendant was specifically warned not to speed a half-hour prior to fatal accident]; *People v. Leffel* (1988) 203 Cal.App.3d 575, 584 [249 Cal.Rptr. 906] [evidence that defendant had not slept for three nights]; *Von Staden, supra,* 195 Cal.App.3d 1423, 1428 [evidence that defendant was specifically warned not to drive while intoxicated]; *People v. Roerman* (1961) 189 Cal.App.2d 150, 159 [10 Cal.Rptr. 870] [evidence that defendant drove to heavily trafficked area with cast on her right foot].) To the extent that *Stanley, supra,* 187 Cal.App.3d 248, suggests otherwise, it is disapproved.

Such an interpretation is consistent with legislative intent. When the Legislature enacted section 191.5, it stated: "The Legislature finds and declares that traffic accidents are the greatest cause of violent death in the United States and that over one-half of the ensuing fatalities are alcohol related. . . . In view of the severe threat to public safety which is posed by the intoxicated driver, there is a compelling need for more effective methods to identify and penalize those who voluntarily consume alcoholic beverages to the point of legal intoxication and thereafter operate a motor vehicle, thereby combining sharply impaired physical and mental faculties with a

vehicle capable of exerting great force and speed and causing severe damage and death." (Stats. 1986, ch. 1106, § 1, pp. 3880-3881.)

Thus the Legislature sought to punish severely those who operate a vehicle when their physical and mental faculties are impaired by voluntary alcohol consumption. To separate the gross negligence inquiry from the question of the defendant's intoxication would undercut the Legislature's goal of preventing drunk driving.

The challenged instruction correctly allowed the jury to find gross negligence from the overall circumstances of defendant's intoxication. ■ Nevertheless, to forestall objections to its wording in future gross vehicular manslaughter cases the instruction should more precisely advise the jury that "The mere fact that a defendant drives a motor vehicle while under the influence of alcohol and violates a traffic law is insufficient in itself to constitute gross negligence. You must determine gross negligence from the level of the defendant's intoxication, the manner of driving, or other relevant aspects of the defendant's conduct resulting in the fatal accident."[5]

The case law on which defendant relies does not require a contrary result. The courts in *People* v. *Leitgeb* (1947) 77 Cal.App.2d 764, 769-770 [176 P.2d 384], and *People* v. *Markham* (1957) 153 Cal.App.2d 260, 275 [314 P.2d 217], found gross negligence from the circumstances of the defendant's driving conduct at the time of the accident but did not consider whether other factors could support a finding of gross negligence. *People* v. *Hoe* (1958) 164 Cal.App.2d 502, 508 [330 P.2d 907], held that the defendant's manner of driving at the time of the accident must be the proximate cause of the death, but also stated in regard to gross negligence: "The jury could find that her conduct in driving while intoxicated and in failing to see either decedent or his car as she approached was grossly negligent conduct." (*Id.* at p. 509.)

Nor is there, as defendant contends, a "direct conflict" between CALJIC No. 8.94 and CALJIC No. 8.93, which defines gross vehicular manslaughter while intoxicated. CALJIC No. 8.93, as given in this case, provides that one element of the crime is that "the driver of the vehicle committed with gross negligence an unlawful act, namely a violation of the maximum speed law or basic speed law of this state . . . ." This language merely clarifies that the element of gross negligence is related to driving conduct. As discussed above, this is consistent with CALJIC No. 8.94.

---

[5]The causal connection required is a broad one. (See, e.g., cases cited *ante*, p. 1038.)

■ We conclude that the finding of gross negligence required to convict a defendant of gross vehicular manslaughter while intoxicated may be based on the overall circumstances surrounding the fatality. Intoxication is one of those circumstances and its effect on the defendant's driving may show gross negligence. In the present case, the jury could reasonably have found that defendant's high level of intoxication led to his reckless manner of driving. It was therefore not error to give the challenged instruction.

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Panelli, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.

Appellant's petition for a rehearing was denied January 30, 1992, and the opinion was modified to read as printed above.